[No. 7841.]

## SHEELY V. THE PEOPLE.

1.  STATUTES—*Construction*—A statute defining and denouncing a crime is to be strictly construed as against the state, but is not to be confined within narrower limits than the legislative intent. The legislative purpose is not to be destroyed by construction.

2.  MAXIMS—*Of Construction*—e. g., "*Ejusdem generis*," "*Noscitur a sociis*," "*Expresio unius exclusio alterius*," are to be resorted to only when they afford aid in ascertaining the legislative intent.

The maxims interpreted, their application explained, and *held* that in the words "any judge, justice of the peace, sheriff, coroner, clerk, constable, jailer, attorney general, or prosecuting attorney, mayor, alderman, or member of city council, member of legislative assemely, *or other officer, ministerial or judicial*," in Rev. Stat. sec, 1720, it is not apparent that the legislature had in mind any particular class of officers, and that therefore these maxims afford no aid in the interpretation of the statute.

3.  CRIMINAL LAW—*Bribery of Officers*—The county commissioners of a county are ministerial officers within the meaning of sec. 1720 Revised Statutes, and a conviction may be had under the statute, for the bribery of one of the county board.

*Error to Weld District Court.*—Hon. NEIL F. GRAHAM, Judge.

Mr. GEO. Q. RICHMOND, Mr. O. N. HILTON, Mr. M. B. WALDRON and Mr. B. B. LASKA, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, attorney general, Mr. CHARLES O'CONNOR, first assistant attorney general, Mr. GEO. A. CARLSON, district attorney, and Mr. JOHN T. JACOBS, for the people.

Mr. CHARLES B. WARD, *Amicus Curiae.*

Mr. JUSTICE MUSSER delivered the opinion of the court:

The plaintiff in error was sentenced for a term in the penitentiary for bribing one of the county commissioners of Weld county. The information was based upon section 1720, Rev. Stat., which, so far as is material to this review, is as follows:

"If any person shall directly or indirectly give any sum or sums of money  *  *  *  to any judge, justice of the peace, sheriff, coroner, clerk, constable, jailer, attorney general or prosecuting attorney, mayor, alderman or member of city council, member of the legislative assembly, or other officer, ministerial or judicial (but such fees as are allowed by law), with intent to induce or influence such officer to  *  *  *  the person so giving and the officer so receiving any money,  *  *  *  with intent or for the purpose of consideration aforesaid, shall be deemed guilty of bribery, and on conviction,  *  *  *."

It is the contention of the plaintiff in error that a county commissioner is not included within the section, and that, therefore, the information did not charge an offense against any law of this state. To determine the question presented it is necessary, as it is in the case of any statute, to ascertain the intention of the legislature in enacting the law. For this purpose, such rules of construction as are favored by the courts

and that may aid in reaching a correct determination may be employed.  At the same time, it must be remembered that this is the criminal statute and should be strictly construed as against the state and liberally in favor of the accused, but the strictness to be employed or the liberality to be indulged must not be such as will confine the operation of the statute within limits narrower than those intended by the legislature, or destroy the intention of the law-making body.  Counsel for plaintiff in error have called to our attention certain well known rules of statutory construction and insist that they should be applied to determine the intention of the legislature with respect to the statute in question.  They are the rules of *ejusdem generis, noscitur a sociis* and *expressio unius est exclusio alterius*.  We have no quarrel with these rules, nor the authorities cited with respect to them.  They can be used only to aid the courts in ascertaining the legislative intent, and when they are to be used for that purpose they of course must be applicable and afford aid.  If they do not afford any aid they are not to be resorted to.

The first two of the rules mentioned are closely related. This is one:  "Where a particular class is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class."—*State v. Krueger*, 134 Mo. 262.  The second is that the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it.  That is, "by considering whether the word in question and the surrounding words are in fact *ejusdem generis* and referable to the same subject matter."—Brooms' Leg. Max. (7th Ed.), p. 439.

It is plain the statement of these rules that before they can be of any aid it must clearly appear that the legislature was thinking of a particular class of persons or objects.  Now it does not appear that the legislature had in mind any particular class of officers when we read the section under consideration.  The words are, "any judge, justice of the peace, sheriff,

coroner, clerk, constable, jailer, attorney general or prosecuting attorney, mayor, alderman or member of city council, member of the legislative assembly, or other officer, ministerial or judicial." Here are enumerated executive, legislative and judicial officers; state, county and municipal officers; some that possess ministerial qualities in varying degrees; some that are alone in their office, others that are members of official bodies. It cannot be said that those mentioned are all of one particular class, so as to make the general words referable to a class. The other rule, that the mention of one thing is the exclusion of the other, is equally inapplicable. Specific enumeration of the officers mentioned does not exclude county commissioners if the general words that follow will fairly include them. It follows that these maxims or rules are not aids in the construction of this statute. If the statute relates to a county commissioner it must be because that officer is fairly included in the words "or other officer, ministerial or judicial." In the general scope of their duties commissioners are not judicial officers.

In *Merwin v. Boulder Co.,* 29 Colo. 169, this court held that passing on claims against the county, which is one of the duties of a county commissioner, is not a judicial act. Yet such an act requires the exercise of discretion and the ascertainment of facts. So in many other matters the county commissioners are vested with large discretionary powers. Some of them may approximate judicial powers, may be called quasi-judicial powers, but most of them are not really judicial. The commissioners are the agents of the county. When they act it is the county acting through them. Whatever they do is in the management and administration of the affairs of the county. They do not sit like a disinterested judge to hear and determine controversies between two parties, but they hear and determine the case of the county that they represent. They, in effect, ascertain facts and employ their discretion largely in their own cases and determine them similar to the the way any business man will do in the management of his

own affairs. These are administrative acts rather than judicial.

County commissioners represent their county and have charge of its property and the management of its business concerns. Their duties are to administer the affairs of their county, and in that behalf to exercise such power as is expressly conferred upon them by the constitution and the statutes of the state, and such implied power as is reasonably necessary to the proper execution of the express power.— *Roberts v. People,* 9 Colo. 458; *Merwin v. Boulder Co., supra.*

The general scope of their duties being the administration of the affairs of the county, they must be administrative officers, and though vested with a large amount of discretion, which this court has many times said cannot be controlled by the courts, yet it is administrative discretion rather than judicial. Nor are they legislative officers. They do not make law, but are themselves wholly subject to the constitution and the statutes, and are concerned only in the administration of the business of the county as therein directed. If they are neither judicial nor legislative officers they must fall within the executive department, the administrative branch, and are to be classed as executive or administrative officers, as these terms are used interchangeably.—*State v. Loechner,* 65 Neb. 814.

So we come to the real question in the case. Did the legislature intend to cover county commissioners by including them within the designation of other ministerial officers? A primary rule of construction is that the intention of the legislature is to be found in the ordinary meaning of the words of a statute in the connection in which they are used and in the light of the mischief to be remedied. While there is a rule requiring the strict construction of a penal statute that rule is not violated by giving to the words their full meaning in connection in which they are employed.—*Woodworth v. State,* 26 O. St. 196.

The mischief sought to be remedied by the statute is the bribery of public officers. Everyone must admit that it is just

as necessary to prevent the bribery of a county commissioner as that of any other official, and that the bribery of a county commissioner is as much within the mischief sought to be remedied by this statute as the bribery of any other officer. A reading of the authorities discloses that the word "ministerial" is used with various shades of meaning. The plaintiff in error, by giving the word the very narrowest meaning it ever has, asserts that county commissioners are not embraced in that meaning. This may be true, but the meaning of the word in the statute under consideration is much more comprehensive than the one given it by counsel. Its precise meaning in any sentence depends upon the connection in which it is used. In the section under consideration the word "ministerial" is used in connection with the word "judicial." The words are used in opposition to one another, and the word "judicial" includes officers that the word "ministerial" does not. It is our duty then to ascertain the ordinary meaning of the word "ministerial" in the connection in which it is used in the section under consideration; that is, in opposition to the word "judicial." Used in this way, it is said in *People v. Jerome,* 73 N. Y. Sup. 306, that the act of every public official is either ministerial or judicial. One of the definitions of "ministerial" given in Webster's New International Dictionary is as follows: "Of the nature of those acts or duties belonging to the administration of the executive function; designating, or pertaining to, an act that a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority without regard to, or without the exercise of, his own judgment upon the propriety of the act done;—opposed to judicial." In *State v. The Governor,* 25 N. J. L. 331, it is said at page 350: "As contra-distinguished from judicial duties all executive duties are ministerial." The same classification that is made in these authorities with respect to acts and duties must be made with respect to officers. Those officers whose duties are judicial in their general scope are judicial officers and those whose duties are executive to the same ex-

tent are executive officers. It, therefore, follows that as contra-distinguished from judicial officers all executive officers are ministerial. The management of the executive department of the government is the administration thereof, and those who are engaged in such management or administration are executive or administrative officers, and are themselves referred to as the administration.—1 Bouv. Dict. (Rawle's Rev.) 56.

"Ministration" in Webster's Dictionary is said to be "the act of ministering," and "minister" is defined to mean "administer." And in the same dictionary, one of the synonyms of "administer" is "minister," and "administerial" is defined as "pertaining to administration or to the executive part of the government." Now the fact that these executive, administrative or ministerial officers may and do exercise discretion and judgment in varying degree in the discharge of their administrative duties does not make them the less ministerial, for if it did there would be few administrative or ministerial officers. Most of them would be excluded and would have to be placed in a class that has not yet been defined by the authorities. The administration of government often requires, in a large degree, the exercise of discretion and judgment.

In *People v. Walter*, 68 N. Y. 403, the court, at page 410, uses the word "ministerial" in opposition to "judicial" and speaks of ministerial officers as exercising judgment and discretion and treats town commissioners as being in that class, notwithstanding that they were given discretion and judgment in the discharge of their duties. It follows from all this that county commissioners who are charged with the administration of the county government and the management of its affairs naturally fall into the class designated as ministerial, in the classification made in the statute under consideration. It is only by giving to the word the very narrowest meaning with which it is ever used—a meaning designated often in the authorities as purely ministerial—that an officer can be excluded from the ministerial class because he may ex-

ercise discretion in the performance of his duties, and it is very plain that the meaning intended in the statute is much more comprehensive than the narrow one sought to be put upon it by the plaintiff in error. Aside from its connection with the word "judicial," "ministerial" is often used as synonomous with "administrative" or "executive," and is used to refer to acts requiring the exercise of discretion. In *People v. Salisbury*, 96 N. W. 936, it is said:

"The character of the act does not depend on the amount of discretion confided to the officer. There is much reason for saying that under our constitution all administrative or ministerial duties are executive in character, as they not only can be nothing else under the constitution, but they are all acts in the conduct of the government, i. e., the administration of public affairs through and under the regulations prescribed by law."

In *State v. Loechner, supra,* the statute under consideration provided that "any clerk, sheriff, coroner, constable, county commissioner, justice of the peace, recorder, county surveyor, prosecuting or district attorney, or any ministerial officer," who was guilty of certain acts should be fined, etc. A member of a board of education of a school district in a city was held to come under the provisions of the statute as being a ministerial officer. The duties of a member of the school board, as related to his district, were analogous to the duties of a county commissioner in this state, as related to his county, as is shown by the following quotation from the opinion:

"The members of the school board are unquestionably regarded by statute as the servants or agents of the corporation, selected for the purpose of conducting and managing its affairs in the manner and under the restrictions pointed out by statute. They are an administrative body charged with the duty of administering the law governing the public schools within the city composing the school district of which they are officers. It is their duty to administer the affairs of the corporation as directed by statute in the exercise of such pow-

ers and authority as are vested in them. Doubtless in many instances in the performance of their duties they may exercise a discretion or judgment *quasi-judicial* in character, but this fact alone can not determine the class to which they belong, or bring them in the category of judicial officers."

From this the court held that the member was an administrative officer and proceeded to show that the word "ministerial" in the statute meant the same thing as "administrative," and that, therefore, the defendant belonged to the class of officers designated as "ministerial," and came within the statute.

Enough has been said to demonstrate that a county commissioner is not only fairly but plainly a ministerial officer in the sense intended by the statute in question, and, therefore, the judgment is affirmed.            *Judgment affirmed.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL not participating.