TINA BUCK and HEATHER BUCK, Minors, by JOSEPH BUCK and DEBRA BUCK, Guardians ad litem, and DEBRA BUCK; JOSEPH BUCK; MARSHA BUCK and HERBERT BUCK, Appellants and Cross-Respondents, v. GREYHOUND LINES, INC., a California Corporation, LTR STAGE LINES, INC., a Nevada Corporation, Respondents and Cross-Appellants, KTNV CHANNEL 13 and JOSEPH REIGHLEY, Respondents.

No. 16799

November 27, 1989 783 P.2d 437

[Rehearing denied April 19, 1990]

*Hibbs, Roberts, Lemons, Grundy & Eisenberg,* Reno; *Phillip S. Aurbach,* Las Vegas; *Beasley, Hewson, Casey, Colleran, Erbstein & Thistle,* Philadelphia, Pennsylvania; and *Robert Land,* Philadelphia, Pennsylvania, for Tina Buck, Heather Buck, Joseph Buck, Debra Buck, Marsha Buck and Herbert Buck.

*Beckley, Singleton, DeLanoy, Jemison & List* and *J. Mitchell Cobeaga* and *Daniel F. Polsenberg,* Las Vegas, for Greyhound Lines, Inc. and LTR Stage Lines, Inc.

*Eugene J. Wait, Jr.,* Reno, for KTNV Channel 13.

*Lyles, Austin & Burnett,* Las Vegas, for Joseph Reighley.

## OPINION

By the Court, STEFFEN, J.:

The central issues of this appeal concern the meaning and scope of Nevada's "Good Samaritan" statute, the applicability of an amendment to the comparative negligence statute to the instant case, and the availability of damages for emotional distress. We

conclude, with one exception, that appellants' position on each of these issues is correct and grant relief accordingly.

## Facts

Late one summer night in 1978, Debra Buck and her twin three-year-old daughters, Tina and Heather, were passengers in a car driven by Marsha Buck. The Bucks were returning from a camping trip a day earlier than Debra's husband and Marsha's companion, both of whom remained at the campsite. The two young women became uncertain of the destination their course of travel was taking them and their concerns were heightened by mechanical abnormalities that were developing in their car. After the women decided to return to the campsite, Marsha attempted to make a U-turn on the desolate stretch of U.S. Highway 95 north of Las Vegas on which they were traveling. In the middle of the U-turn, the car stalled, blocking the northbound lane of the road. Debra's twin daughters remained asleep in the back seat of the car as their mother apprehensively exited the vehicle in hopes of flagging down someone who would give them aid.

The first passing car continued southbound. Then Joseph Reighley, a former highway patrol officer, driving a pickup truck for KTNV, stopped to help. He instructed Debra to tell Marsha to turn off the lights of the car to save the battery for starting purposes. Reighley said that he would protect them with his own headlights. He stayed in his truck in the southbound lane for a short while, shining his lights toward the south. He intended to push the car if it would not start.

Shortly thereafter, the lights of a Greyhound bus came into view, a mile or two away. The bus was northbound. Reighley started flashing his lights to warn the driver of the bus, but the bus maintained its speed. At about eighty feet from the Bucks' car, the lights from the pickup truck temporarily blinded the bus driver. He slowed to about fifty miles per hour. Then, as he drove past the spot where the lights were hitting his eyes, he saw the stalled car and vainly tried to stop.

Debra saw the bus coming. She tried at the last instant to brace the car with her body in a desperate attempt to save her children. The attempt, of course, was futile. The bus hit the car and Debra and the occupants of the car were severely injured. Tina is now a paraplegic.

On the separate claims of the two young adult women, the jury found that they were each twenty percent negligent. Of the remaining degree of fault on each claim, Greyhound was adjudged to be seventy-five percent at fault and Reighley's fault was assessed at twenty-five percent. The jury found, however,

that Reighley was not grossly negligent and that he was acting in an emergency within the meaning of NRS 41.500. Reighley and his employer, KTNV, thus were excused from liability.

## Discussion

Appellants contend that the trial court erred in giving the jury an instruction on NRS 41.500, Nevada's "Good Samaritan" statute.[1] Although the specificity with which appellants objected to the instruction left much to be desired, we nevertheless conclude that the trial court was adequately alerted to the issue of the

---

[1] As of the date of the accident, NRS 41.500 read as follows:

1. Except as provided in NRS 41.505, any person in this state, who renders emergency care or assistance in an emergency, gratuitously and in good faith, shall not be held liable for any civil damages as a result of any act or omission, not amounting to gross negligence, by such person in rendering the emergency care or assistance or as a result of any act or failure to act, not amounting to gross negligence, to provide or arrange for further medical treatment for the injured person.

2. Any person in this state who acts as an ambulance driver or attendant on an ambulance operated by a volunteer ambulance service or as a volunteer driver or attendant on an ambulance operated by a political subdivision of this state, or owned by the Federal Government and operated by a contractor of the Federal Government, and who in good faith renders emergency care or assistance to any injured or ill person, whether at the scene of an emergency or while transporting such injured or ill person to or from any health facility, clinic, doctor's office or other medical facility, shall not be held liable for any civil damages as a result of any act or omission, not amounting to gross negligence, by such ambulance driver or attendant in rendering the emergency care or assistance, or as a result of any act or failure to act, not amounting to gross negligence, to provide or arrange for further medical treatment for the injured or ill person.

3. Any duly appointed member of a volunteer ambulance service or a duly appointed volunteer member of an ambulance service operated by a political subdivision of this state, other than an ambulance driver or attendant, shall not be held liable for any civil damages as a result of any act or omission, not amounting to gross negligence, by such member whenever he is performing his duties in good faith as a member of such volunteer ambulance service or ambulance service operated by a political subdivision.

4. Any person who is a member of a search and rescue organization in this state under the direct supervision of any county sheriff who in good faith renders emergency care or assistance to any injured or ill person, whether at the scene of an emergency or while transporting such injured or ill person to or from any health facility, clinic, doctor's office or other medical facility, shall not be held liable for any civil damages as a result of any act or omission, not amounting to gross negligence, by such person in rendering the emergency care or assistance, or as a result of any act or failure to act, not amounting to gross negligence, to provide or arrange for further medical treatment for the injured or ill person.

statute's applicability to the facts of the case. We therefore conclude that the issue has been preserved for review on appeal. *See* NRCP 51; *cf.* Otterbeck v. Lamb, 85 Nev. 456, 456 P.2d 855 (1969); Tidwell v. Clarke, 84 Nev. 655, 447 P.2d 493 (1968).

There are two reasons why NRS 41.500 should not have been a factor in the jury's deliberations. First, as argued by appellants below, a requisite emergency did not exist at the time Reighley stopped to provide assistance. For our purposes, it is sufficient to consider the elements of an "emergency" by reference to the subject as contained in the case of Dahl v. Turner, 458 P.2d 816 (N.M.App. 1969). The *Dahl* court, after quoting the New Mexico statutory definition of emergency ("an unexpected occurrence involving injury or illness to persons, including motor vehicle accidents and collisions, disasters, and other accidents and events of similar nature occurring in public or private places"— N.M.S.A. 1953 (Repl.vol. 3) § 12-12-4), also noted:

> "Emergency" has been defined as unforeseen circumstances or the resultant state that calls for immediate action. Webster's Third New International Dictionary. It has been defined as a sudden or unexpected occasion for action; a pressing necessity. Black's Law Dictionary (4th ed. 1951). See also, Good Samaritan Legislation: An Analysis and a Proposal, 38 Temple Law Quarterly 418 n.41 at 424 (1964-65).

*Id.* at 824. Obviously, the critical ingredients of an emergency situation include: suddenness, the unexpected, necessity for immediate action, and lack of time for a measured evaluation of alternative courses of action, their respective efficacy and priority. Although the emergency equation will most often involve injured or ill persons, it may also involve persons who are in imminent peril of injury or death.

In the instant case, as Reighley arrived at the scene, there were no injured parties, no oncoming traffic, no stressful components to interfere with deliberate, measured thought processes, and ample time to simply push the Bucks' Mustang automobile off the road where attempts to restart the car could be safely undertaken. The emergency that eventually arose was the product of Reighley's own negligence. Rather than assist in the simple task of pushing the car to a safe location, Reighley instructed the women to turn off the lights and save the battery for the continuing attempts by Marsha to restart the car. The dark-colored Mustang that was positioned sideways to oncoming traffic was thus made all the more difficult to see. Reighley compounded the

problem he was creating by blocking the other lane of traffic with his own vehicle and shining his lights at any northbound traffic, thus making it even more difficult to see the unlit Mustang that was in the northbound lane. The situation escalated into a harrowing emergency when the Greyhound bus approached the complex of danger and disaster fostered by Reighley. Reighley's alternating lights drew the bus driver's attention to Reighley's vehicle in the southbound lane and away from the darkened Mustang that sat motionless in the path of the oncoming bus. Reighley's lights eventually temporarily blinded the driver of the bus who, after recovering, then saw, too late, the Mustang directly in front of him.

It is true that the jury entered a special finding that Reighley rendered "emergency assistance in an emergency." However, Reighley himself admitted that there was no emergency when he stopped to assist the Bucks. For the reasons previously mentioned, we hold that there was no emergency as a matter of law, and it was error to give the issue to the jury. *Cf.* Egede-Nissen v. Crystal Mountain, Inc., 606 P.2d 1214, 1220 (Wash. 1980) (the emergency doctrine is not available to those who, in whole or in part, cause the emergency).

Second, both the history and the language of the statute, NRS 41.500(1), make clear its intended purpose to insulate from liability for ordinary negligence persons who render emergency care or assistance in an emergency *to injured persons.* Three key prerequisites to the protection of the statute are: (1) rendering *emergency* care or assistance, (2) in an *emergency* (3) to *injured persons.* The statute thus encourages passersby to involve themselves in emergencies where injured persons are in need of emergency care or assistance. In insulating such "Good Samaritans"[2] from liability for damages or injuries resulting from their ordinary negligence, the statute recognizes that in emergency situations there are factors operating that militate against calm, orderly reasoning that persons of ordinary care and intelligence would normally exercise under emergency-free circumstances.

NRS 41.500(1) identifies only one category of recipient of emergency care or assistance—the injured person. Limiting the intended beneficiaries of the "Good Samaritan's" care or assistance to injured persons is entirely consistent with the remaining paragraphs of NRS 41.500 which are also confined to injured or ill persons. If we were to expand the scope of NRS 41.500(1) to

[2]The reference to beneficiaries of NRS 41.500 and similar statutes in other states as "Good Samaritans" is derived from the Biblical parable contained in *Luke* 10:30-37.

include emergency care or assistance to uninjured, healthy persons, indeed to all persons caught up in an emergency, references to injured persons both under section 1 and the remaining sections of the statute would be redundant and meaningless. Moreover, such a construction would attribute a high degree of inexactitude, if not ineptitude, to the statute. We decline to so construe it.

If the legislature desires to expand the statutory protection to cover emergency situations involving persons who are injured or not, we leave it to that body to so provide.

Because the "Good Samaritan" statute did not apply to the involvement of Reighley in the instant case, it was prejudicial error to instruct the jury on the subject. Moreover, because the jury specifically found that Reighley's negligence contributed twenty-five percent to the collision, it is unnecessary to order a new trial to determine the extent of Reighley's liability. Similarly, it is unnecessary to retry the case against KTNV because the jury determined that Reighley was acting within the course and scope of his employment with KTNV at the time of the accident. Obviously, KTNV's liability is coextensive with that of its employee, Reighley.

Appellants also argue that the judgment against all defendants below should have been joint and several rather than just several as determined by the district court. We agree as to the injured infants, Tina and Heather.

Under the common law, liability was joint and several where two or more tortfeasors caused injury through their combined or concurrent tortious conduct. *See* Prosser, *Law of Torts,* 5th Ed. (1984), p. 328. Thus, any one of several tortfeasors whose comportment contributed to a plaintiff's injuries could be tapped for the entire amount of damages. *Id.* However, the Nevada Legislature modified the common law rule in situations where the injured plaintiff was partly responsible for his own injuries. Under NRS 41.141 (1973 Nev. Stats., Ch. 787, p. 1722), actions involving injuries to persons or property "in which contributory negligence may be asserted as a defense" imposed several liability on defendants against whom judgments were entered.

The referenced statute, as it existed on the day of the collision, applied only to actions for the recovery of damages for injuries to persons or property under circumstances that justified an adjudication of the plaintiff's role in the composite of causes of his injuries. Respondents suggest that the statutory language referring to actions "in which contributory negligence *may* be

asserted as a defense'' (emphasis supplied) constitutes only a generic reference to ''fault-based tort actions'' in which the defense of contributory negligence may, theoretically or actually, be legally asserted. Such a contention is untenable. Neither attorneys nor parties are authorized to plead defenses that are not well grounded in fact or warranted by law. *See* NRCP 11. The statute must be read as applying to situations where a plaintiff's contributory negligence may be properly asserted as a bona fide issue in the case. In the instant case, claims asserted on behalf of the three-year-old twins sleeping in the Bucks' Mustang at the time of the collision would not, as a matter of law, be subject to the defense of contributory negligence. Therefore, the statute has no application to Tina and Heather and the judgments entered and to be entered in their favor are to be joint and several as to all defendants.

We realize that the result of the entry of joint and several judgments against all defendants may cause substantial inequities. Such a contingency has always been a possible if not probable result of the application of the common law rule. It is apparent, however, that the rule favored the proposition that it is better to fully compensate an innocent victim of the combined negligence of multiple defendants than to assure that each defendant is held responsible only for his proportionate share of the plaintiff's damages. If the general rule is to be changed, we are content to leave it to the Legislature to do so.

Appellants' contention that the amended version of NRS 41.141 in effect at the time of trial should be applied retroactively to benefit the adult appellants is without merit. This court has consistently held that statutes are to be given prospective effect only unless the Legislature has clearly manifested its intent that the statutes operate retrospectively. Rice v. Wadkins, 92 Nev. 631, 555 P.2d 1232 (1976). We do not agree that the general rule against retroactivity is inapplicable in the instant case because it relates ''merely to remedies and procedures.''

In Holloway v. Barrett, 87 Nev. 385, 390, 487 P.2d 501, 504 (1971), we noted that as a general rule ''a statute affecting rights and liabilities, should not be so construed as to act upon those already existing. To give it that effect the statute should in express terms declare such to be the intention.'' Modifying the liability of multiple defendants from several to joint and several can hardly be described as a change in procedure or remedy. It may greatly increase the exposure of one or more defendants to satisfy an entire judgment as opposed to an aliquot share. There would be few aspects of an action that could have greater substantive

impact on a defendant than to apply a statute retrospectively in order to hold a judgment debtor responsible for the payment of all damages even though his or her contribution to the damages may be among the least of the tortfeasors. We decline to give NRS 41.141 retrospective effect so as to adversely affect existing liabilities.

Appellants next contend that the district court erred in refusing to instruct the jury on Debra's entitlement to damages for emotional distress in witnessing the impending injury or death of her twin daughters as the bus moved swiftly and surely to the point of collision with the small car in which the two three-year-olds were sleeping. We agree. This court, in State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985), formally declared Nevada's recognition of a cause of action for emotional distress suffered by a witness to the death or injury of a loved one. Specifically, we adopted the reasoning of Dillon v. Legg, 441 P.2d 912 (Cal. 1968), which rejected both the traditional "impact rule" and the "zone of danger" rule. Although this court had not previously resolved the law concerning the actionability of a claim for emotional distress by a bystander, in *Eaton* we did note that although the plaintiff was in the zone of danger when her child was killed, "[f]uture plaintiffs . . . need not prove that they were in the zone of danger to recover for negligently inflicted emotional distress in Nevada." 101 Nev. at 714, 710 P.2d at 1376. It thus appears that we impliedly recognized the zone of danger rule as the basis for bystander relief for emotional distress at the time of the collision in the instant case. In any event, whether under the old "impact rule," the "zone of danger rule," or the *Dillon* and *Eaton* rule, Debra was clearly entitled to have the jury instructed on damages for emotional distress. The evidence reflects Debra's heightened level of anxiety and distress as the bus sped towards a certain impact with her and her sleeping babies. Debra was seriously injured by the impact of the collision as she stood directly in the zone of danger.

Because Debra's claim for emotional distress damages was erroneously excluded from consideration by the jury, a new trial on that limited issue will be necessary.

Appellants contest the allowance of attorney's fees awarded Reighley by the district court. We need not consider the propriety of the award under the judgment entered below. Because we have determined that a joint and several judgment must be entered against Reighley and KTNV on behalf of the infants Tina and

Heather, and a several judgment against Reighley and KTNV as to the adult plaintiffs below, the award of attorney's fees may not stand.

On cross-appeal, Greyhound/LTR contend that the interest award in the judgment is improper as to both the rate and the amount. We decline to consider the issue because trial counsel for cross-appellants expressly agreed to the rate and amount of interest fixed by the district court. Moreover, cross-appellants have raised the issue for the first time on appeal. *See* Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 623 P.2d 981 (1981).

Other issues raised by cross-appeal are either premature or of no merit.

For the reasons specified above, we remand this matter to the district court for purposes of entering a joint and several judgment against Reighley and KTNV as to Tina and Heather Buck and a several judgment favoring the adult plaintiffs; the judgment against Greyhound/LTR shall also be modified so as to be joint and several as to Tina and Heather; a new trial shall be ordered for Debra Buck on the limited issue of damages for emotional distress and the award of attorney's fees in favor of Reighley is vacated; in all other respects the judgment upon the verdict entered below is affirmed.[3]

YOUNG, C. J., and SPRINGER, J., concur.

MOWBRAY, J., dissenting:

Respectfully, I dissent. In my opinion the district judge correctly charged the jury in the application of the Good Samaritan Rule. The jury after hearing the testimony, observing the witnesses and examining the evidence found Reighley who had stopped to give aid a "Good Samaritan" within the meaning of the Rule. While the jury found Reighley guilty of ordinary negligence, the jury did not find Reighley guilty of gross negligence and consequently assessed no damages against him.

The Legislature in its wisdom passed into law the Good Samaritan Statute. This law encourages passers-by, as its title implies, to give aid to fellow travelers in emergency situations. Reighley was attempting to do precisely that in the instant case when the Greyhound Bus smashed into the victims' car causing the resulting catastrophic injuries.

Nevada has many miles of long lonely highways. If one wishes

---

[3]THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.

to stop to give aid to those in emergency situations that person should feel secure in knowing that he or she is shielded by the Good Samaritan Rule. Otherwise, such a person may elect to ignore those in distress with a "wave of the hand" as they proceed down the highway. Such conduct hardly seems to be in the spirit of the West, particularly Nevada.