**John K. FOGG, II, Petitioner,**

v.

**Mario R. MACALUSO and the County of Pueblo, Respondents.**

No. 93SC606.

Supreme Court of Colorado,
En Banc.

March 6, 1995.

Peter J. Obernesser and Patrick J. Canty, Colorado Springs, for petitioner.

Vaughan & Reeves, P.C., Gordon L. Vaughan, Colorado Springs, for respondents.

Beth A. Whittier, Colorado Springs, for amicus curiae Colorado Counties, Inc.

Griffiths & Tanoue, P.C., Tami A. Tanoue, Denver, for amici curiae Colorado Intergovernmental Risk Sharing Agency and Colorado Counties Cas. and Property Pool.

Justice MULLARKEY delivered the Opinion of the Court.

The petitioner, John Fogg (Fogg), brought an action in negligence against the respondents, sheriff's deputy Mario Macaluso (Macaluso) and the County of Pueblo (the County), for the injuries he sustained when his vehicle struck Macaluso's parked patrol car in the passing lane of Interstate 25. The trial court entered summary judgment in favor of Macaluso and the County on grounds of sovereign immunity under the Colorado Governmental Immunity Act (GIA), sections 24–10–101 to 120, 10A C.R.S. (1988). The court of appeals held that the proper procedure for determining the sovereign immunity of a public entity was as a motion to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1) and affirmed dismissal. *Fogg v. Macaluso,* 870 P.2d 525 (Colo.App. 1993). We granted certiorari to determine whether the court of appeals erred in affirming dismissal of Fogg's action on grounds that Macaluso was responding to an "emergency" within the exception to the waiver of immunity under section 24–10–106(1)(a). We reverse the judgment of the court of appeals and return the case for remand to the district court for further proceedings to apply

the definition of emergency set out in this opinion.

## I.

The undisputed facts that we can identify from the parties' briefs and the record on appeal are as follows. While on duty Macaluso responded to a report that a car was stranded in the median on Interstate 25. When he located the car, he discovered that it had gone off the road into the median as a result of a flat tire. He parked his patrol car, with the flashing emergency lights activated, in the left lane of the interstate while he helped the driver to change the tire and leave the median. At the time Macaluso's patrol car was parked in the left lane, Fogg was driving south on Interstate 25 between Colorado Springs and Pueblo. He had pulled into the left lane to pass on a long downhill curve when he saw Macaluso's patrol car. He attempted to swerve around it, but struck Macaluso's car in the rear.

Fogg brought this action against Macaluso and the County alleging that his injuries were caused by Macaluso's negligence while acting as a sheriff's deputy for the County. Macaluso and the County filed a motion to dismiss or, alternatively, for summary judgment on grounds that sovereign immunity under the GIA bars actions against a governmental entity and its employees for injuries resulting from the operation of an emergency vehicle responding to an emergency.

Based on the facts alleged in the pleadings and affidavits submitted by the parties, the trial court determined that there was no issue of material fact, and that Macaluso was responding to an emergency call within section 42–4–106(2), 17 C.R.S. (1993). Therefore, the court concluded that the defendants were immune from suit under the GIA and entered summary judgment.

The court of appeals applied our recent decision in *Trinity Broadcasting v. City of Westminster,* 848 P.2d 916 (Colo.1993), and treated defendant's motion as a motion to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1). Following the standard of review applied in Trinity, the court of appeals found that the record contained competent evidence to support the trial court's determination that Macaluso was responding to an emergency call when he parked his vehicle. The court also affirmed the trial court's holding that section 42–4–106(4), which requires the operators of emergency vehicles "to drive with due regard for the safety of all persons," was not incorporated into the GIA.

On petition to this court, Fogg contends that, when ruling on a motion to dismiss, both the trial court and the appellate court must construe the factual allegations most favorably to the plaintiff by assuming the facts pled are true. He asserts (1) that the facts alleged indicated that Macaluso was not responding to an emergency; (2) that the courts below erred in failing to consider the requirement that emergency vehicles be driven "with due regard for the safety of all persons" in order to qualify for sovereign immunity under the GIA; and (3) that the facts alleged indicated that Macaluso had not operated his vehicle with due regard for the safety of others.

## II.

### A.

The first question for us to resolve on appeal is what type of situation constitutes an "emergency" under the statute. Construction of a statute is a question of law, not a factual determination. *Colorado Div. of Employment & Training v. Parkview Episcopal Hosp.,* 725 P.2d 787, 790 (Colo. 1986). In resolving a question of law, the lower court's judgment is subject to independent review by the appellate court. *Evans v. Romer,* 854 P.2d 1270, 1274 (Colo.1993).

The GIA establishes sovereign immunity for all public entities and public employees to all actions in tort, or which could lie in tort, except as specifically provided under the GIA. § 24–10–105. In parts relevant to this case, the GIA states:

24–10–106. Immunity and partial waiver.

(1) A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant

except as provided otherwise in this section. Sovereign immunity is waived by a public entity in an action for injuries resulting from:

(a) The operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of his employment, except emergency vehicles operating within the provisions of section 42–4–106(2) and (3), C.R.S.;

§ 24–10–106 (emphasis added). The referenced subsections of section 42–4–106 provide:

(2) The driver of an authorized emergency vehicle, when responding to an emergency call, ... may exercise the privileges set forth in this section, but subject to the conditions stated in this article. The driver of an authorized emergency vehicle may:

(a) Park or stand, irrespective of the provisions of this title;

. . . .

(3) ... the exemption granted in paragraph (a) sections (2) of this section shall apply only when such vehicle is making use of visual signals meeting the requirements of section 42–4–212 unless using such visual signals would cause an obstruction to the normal flow of traffic; .... Nothing in this section shall be construed to require an emergency vehicle to make use of audible signals when such vehicle is not moving, whether or not the vehicle is occupied.

§ 42–4–106(2), (3) (emphasis added). See also §§ 42–1–102(5) and 42–4–106(5) (defining "authorized emergency vehicle").

■ Because neither Title 42 nor Title 24 defines "emergency" or "emergency call," we must determine the legislature's intent without explicit guidance. In construing statutes, we give effect to the intent of the legislature by looking first at the language of the statute. *Moody v. Corsentino*, 843 P.2d

1355, 1370 (Colo.1993). To effectuate legislative intent, we must give statutory terminology its commonly accepted meaning. *Boulder County Bd. of Equalization v. M.D.C. Construction Co.*, 830 P.2d 975, 980 (Colo.1992). A strained or forced construction of a statutory term is to be avoided, *Triad Painting Co. v. Blair*, 812 P.2d 638, 644 (Colo.1991), and we must look to the context of a statutory term. *State v. Hartsough*, 790 P.2d 836, 838 (Colo.1990) (context of word in statute may provide guidance as to word's meaning); *People ex rel. Dunbar v. Trinidad State Junior College*, 184 Colo. 305, 309, 520 P.2d 736, 738 (1974) (legislative intent may be derived by consideration of the language in the context of the statute); *Sheely v. People*, 54 Colo. 136, 138, 129 P. 201, 202 (1912) ("the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it").

■ Moreover, terms should be construed in harmony with one another so as to give full effect to the legislative intent in enacting the statute. *McCarty v. People*, 874 P.2d 394, 398 (Colo.1994); *People v. Andrews*, 871 P.2d 1199, 1201 (Colo.1994). Therefore, consideration of an undefined term in context may provide guidance as to legislative intent and the term's proper meaning.

■ In *People v. McKnight*, 200 Colo. 486, 617 P.2d 1178 (1980), we interpreted a statute which, like the statutes at issue in this case, failed to explicitly define "emergency." In that case we endorsed the common usage of the term as found in Webster's Seventh New Collegiate Dictionary: "1: an unforeseen combination of circumstances or the resulting state that calls for immediate action 2: a pressing need: EXIGENCY." *Id.* n. 9. We find the McKnight definition to be appropriate for interpreting sections 24–10–106(1)(a) and 42–4–106(2) and applying them to the facts of this case.[1]

1. We note that courts in numerous other jurisdictions have adopted the same or a similar dictionary definition of "emergency" that we do here for application in a wide variety of contexts. See, e.g., *International Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 793 (2d Cir.1994) (adopting the dictionary definition of "emergency" as "an unforeseen combination of circum-

stances or the resulting state that calls for immediate action" for purposes of interpreting union constitution); *Estate of Sowell v. Commissioner of Internal Revenue*, 708 F.2d 1564, 1567 (10th Cir.1983) (adopting the dictionary definition of "emergency" and stating that an emergency "calls for immediate action, or it is pressing" under terms of testamentary trust); *Los Angeles*

Consideration of section 42–4–106(2) in its entirety lends further support to this interpretation of emergency as an exigency or an unforeseen combination of circumstances that call for immediate action. Section 42–4–106(2) provides:

> The driver of an authorized emergency vehicle, when responding to an emergency call, or when in pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section....

In addition to mandating tort immunity for drivers on an emergency call, the statute establishes immunity for two specifically enumerated situations. These arise when public employees are pursuing criminals or are responding to fire alarms. Both involve temporally urgent events and require rapid responses. In such circumstances, a driver may be less able to exercise proper care.[2] In order to facilitate the public benefit gained from quick response to these situations, the legislature has created tort immunity for emergency vehicle drivers. The situations enumerated in section 42–4–106(2) illustrate

the legislature's intent to create tort immunity for public employees reacting to events that require immediate response. Thus, consideration of the context of section 42–4–106(2) provides further support for our definition of emergency as an incident requiring an immediate response or as an exigency.

This interpretation is further bolstered by the fact that the legislature specifically excluded emergency vehicle drivers returning from a fire alarm from the tort immunity privilege. § 42–4–106(2). In this situation, a driver has ample time to take ordinary care when driving the emergency vehicle. Thus, there is less reason and need for tort immunity. This particular exclusion shows that the legislature intended to provide protection only for those public employees who are acting under exigent circumstances that call for immediate action.

■ Although we adopt the same definition applied by the court of appeals in this case, *Fogg*, 870 P.2d at 527, it would be unfair to the parties to set out a definition of a statutory term essential to the case and not provide them with an opportunity to present

*County v. Payne*, 8 Cal.2d 563, 66 P.2d 658, 662 (1937) (noting that it had adopted the dictionary definition of "emergency" as " '[a]n unforeseen occurrence or combination of circumstances which calls for an immediate action or remedy; pressing necessity; exigency' " in determining validity of emergency resolution); *Opyt's Amoco, Inc. v. Village of South Holland*, 149 Ill.2d 265, 172 Ill.Dec. 390, 396, 595 N.E.2d 1060, 1066 (1992) (adopting same definition in interpreting municipal ordinance); *Buck v. Greyhound Lines, Inc.*, 105 Nev. 756, 783 P.2d 437, 440–41 (1989) (quoting the dictionary definition of "emergency" and stating that "necessity for immediate action" is a "critical ingredient [ ] of an emergency situation" in the context of the Good Samaritan statute) (emphasis added); *Scatuorchio v. Jersey City Incinerator Auth.*, 14 N.J. 72, 100 A.2d 869, 877–78 (1953) (applying the general definition of "emergency" as "a 'sudden or unexpected occurrence or condition calling for immediate action' " in determining validity of municipal declaration of emergency); *Roberts v. Kettelle*, 116 R.I. 283, 356 A.2d 207, 216 (1976) (stating with approval that in the absence of a statutory definition of "emergency," the trial court read the dictionary definition of " 'an unforeseen combination of circumstances which calls for immediate action' " to the jury in order for the jury to determine whether the defendant police officer was responding to an emergency

call for purposes of establishing a statutory defense to a negligence action); *City of Rock Springs v. Police Protection Ass'n*, 610 P.2d 975, 981 (Wyo.1980) (adopting the dictionary definition of "emergency" as " 'an unforeseen combination of circumstances or the resulting state that calls for immediate action' and 'a pressing need' " in determining validity of emergency personnel appointment); see generally 14 Words and Phrases 435–57, 458 (1952 & 1994 Supp.) (listing of cases defining "emergency" and "emergency call").

2. Courts in other jurisdictions have recognized that the purpose behind retaining sovereign immunity for public employees who are responding to an emergency call derives from the fact that they are acting under exigent, or dangerous, circumstances that preclude exercise of normal care. See, e.g., *Martin v. Weaver*, 666 F.2d 1013, 1018 n. 1 (6th Cir.1981), cert. denied, 456 U.S. 962, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982); *Lingo v. Hoekstra*, 176 Ohio St. 417, 27 O.O.2d 384, 200 N.E.2d 325, 328 (1964); see generally W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 33, at 196–197 (5th ed. 1984) (discussing the "emergency rule" of negligence and stating that because a person acting in an emergency situation has no time for adequate thought, the standard of care must be that of a reasonable person under the emergency circumstances).

relevant evidence and argue how the newly delineated definition applies to that evidence. Further, the trial court did not have the benefit of the Trinity decision and did not conduct an evidentiary hearing before deciding the case. From the record before us, it is unclear whether the trial court had all the facts before it when it reached its decision. Accordingly, this issue must be remanded to the trial court for further proceedings as appropriate and for application of the definition of "emergency," as set out in this opinion, to the facts of the case.

### B.

■ The parties next dispute whether a motion to dismiss on grounds of immunity under the GIA must be treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), or as a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5). Fogg takes the position that the assertion of immunity under the GIA is a substantive claim. Thus, a trial court should address a motion to dismiss on grounds of immunity under C.R.C.P. 12(b)(5) and treat all facts alleged by the non-moving party as true. Macaluso and the County assert that under our decision in Trinity, immunity pursuant to the GIA is a jurisdictional issue. Accordingly, a trial court is authorized to make appropriate factual findings under C.R.C.P. 12(b)(1). We agree that C.R.C.P. 12(b)(1) is the applicable rule in this situation.

Macaluso and the county correctly point out that the application of Trinity to the emergency vehicle exception of the GIA was at issue when we granted certiorari and vacated the court of appeals' judgment in *Cline v. Rabson*, 856 P.2d 1 (Colo.App.1992) (*Cline I*). We remanded for reconsideration in light of our Trinity decision. *Id.* Cline I involved a suit for personal injuries suffered when a motorcyclist was struck by a Loveland police patrol car pursuing a speeding vehicle. In a pre-trial motion, the Loveland defendants asserted a claim of immunity under the emergency vehicle exception to the GIA. The trial court ruled in favor of the Loveland defendants after conducting an evidentiary hearing. *Id.* at 2. On appeal, the

plaintiff claimed that the trial court erred in taking evidence and making findings of fact on the immunity issue. The court of appeals agreed and reversed the trial court. It reasoned that the usual rules regarding summary judgment applied to a pre-trial claim of immunity brought under section 24–10–108, 10A C.R.S. (1988), and disputed issues of material fact should have been reserved for trial. *Cline I,* 856 P.2d at 3.

After our order granting certiorari, vacating Cline I, and remanding for reconsideration in light of Trinity, the court of appeals issued a new opinion reaching the opposite result. *Cline v. Rabson,* 862 P.2d 1035 (Colo. App.1993) (*Cline II* ). It applied C.R.C.P. 12(b)(1) and held that the trial court properly acted as a factfinder on the immunity question after holding an evidentiary hearing and considering the testimony of witnesses. Accordingly, it affirmed the trial court's finding that the Loveland defendants were immune from suit under the emergency vehicle exception to the GIA. *Id.* at 1036.

While there is some difference in language in the GIA between the notice section, 24–10–109, which was at issue in Trinity, and the sovereign immunity section, 24–10–108, which is at issue in this case and was at issue in the Cline cases, these differences do not compel a different result. Section 109 states that notice is a "jurisdictional prerequisite" to suit and failure to comply "shall forever bar any such action." Section 108 is entitled "Sovereign immunity a bar" and states that sovereign immunity "shall be a bar" to any action that lies in tort or could lie in tort. Section 108 also expressly directs the trial court to hear and decide a claim of sovereign immunity "on motion" if it is raised before trial. Section 108 allows expedited discovery of facts relevant to sovereign immunity and provides that the court's decision is a "final judgment" subject to immediate appeal.

■ These differences do not compel a different result with respect to the procedural question decided in Trinity because both are sections which define requirements for subject matter jurisdiction—section 109 by its express terms and section 108 because "the terms of [the sovereign's] consent to be sued in any court define that court's jurisdic-

tion to entertain that suit." *United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990) (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976)); see also *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1940) (and the cases cited therein); § 24–10–102 ("The general assembly also recognizes the desirability of including within one article all the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable in actions which lie in tort or could lie in tort....." (emphasis added)). Thus, in its opinion in Cline II, the court of appeals correctly interpreted Trinity. Whether a claim falls within an exception to the GIA's waiver of sovereign immunity is a question of subject matter jurisdiction and, if raised before trial, it appropriately is addressed under C.R.C.P. 12(b)(1). Cf. *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir.1993) (district court lacks subject matter jurisdiction if claim is within specified exception to Federal Tort Claims Act's general waiver of sovereign immunity; application of exception properly determined under Fed.R.Civ.P. 12(b)(1)).

On remand, the trial court is directed to apply C.R.C.P. 12(b)(1).

### III.

■■■■■ In his petition, Fogg finally maintains that even if Macaluso was responding to an "emergency," he nonetheless was required to "drive with due regard for the safety of others" under section 42–4–106(4) in order to qualify for sovereign immunity under section 24–10–106. This contention is without merit. Where the language of a statute is unambiguous, we must give effect to that unambiguous language and there is no need to resort to interpretive rules of statutory construction. *McKinney v. Kautzky*, 801 P.2d 508, 509 (Colo.1990). In this instance, the terms of section 24–10–106 are very clear. Sovereign immunity bars an action under the GIA for "emergency vehicles

operating within the provisions of section 42–4–106(2) and (3), C.R.S." § 24–10–106(1)(a). Subsections 42–4–106(2) and (3) do not impose a duty on emergency vehicle operators, who are responding to emergency calls, to drive with due regard for the safety of others. We will not read such a requirement into the GIA without statutory authorization.[3]

### IV.

For the foregoing reasons, we reverse the court of appeals' decision, but affirm the court of appeals' holding that section 24–10–106(1)(a) of the GIA does not require emergency vehicle operators to comply with section 42–4–106(4) in order to qualify for sovereign immunity. We return the case with directions to remand it to the trial court for further proceedings under C.R.C.P. 12(b)(1) and application of the definition of "emergency" set out in this opinion.

SCOTT, J., specially concurs in the result.

Justice SCOTT specially concurring in the result:

I agree with the majority's definition of "emergency as an exigency or an unforeseen combination of circumstances that call for immediate action." Maj. op. at 275. I also agree that it would be unfair not to give the parties the opportunity to "present relevant evidence and argue how the newly delineated definition applies to [the] evidence." Maj. op. at 276. Moreover, I agree that because "the trial court ... did not conduct an evidentiary hearing before deciding the case," maj. op. at 276, we must remand this matter to the trial court. I write separately, however, because I do not join in part II B of the majority's opinion.

In part II B, the majority concludes that pretrial motions under section 24–10–108, 10A C.R.S. (1988), should be treated in the same fashion as motions to dismiss for failure to meet the notice requirements under section 24–10–109, 10A C.R.S. (1988). The majority does so despite noting "some differ-

---

**3.** *Cline II,* 862 P.2d at 1036, is overruled in part to the extent that it may be interpreted as requiring a showing of due care by the operator of an

emergency vehicle who is responding to an emergency call.

ence in language," maj. op. at 276 (emphasis added), including specific language in section 24–10–109, i.e. "jurisdictional prerequisite," not present in section 24–10–108. Because I believe it is a difference worthy of distinction and that section 24–10–108 only mandates the use of pretrial motions, I do not join in part II B of the majority opinion. I nonetheless concur in the judgment because in my view this matter must be remanded for further proceedings and application of the correct standard.

I

In 1971 we abrogated the doctrine of sovereign and governmental immunity as unjust and inequitable. § 24–10–102, 10A C.R.S. (1988) ("The General Assembly also recognizes that the supreme court has abrogated the doctrine of sovereign immunity...."); *Bertrand v. Board of County Comm'rs*, 872 P.2d 223, 226 (Colo.1994) (citing *Evans v. Board of County Comm'rs*, 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. School Dist.*, 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State*, 174 Colo. 113, 482 P.2d 965 (1971)). As a consequence, the doctrine of sovereign immunity is now recognized "only to such extent as may be provided by statute." § 24–10–102, 10A C.R.S. (1988).

The General Assembly created immunity for public entities through section 24–10–106. In Bertrand, we held that "the immunity created by the GIA is in derogation of the common law." *Bertrand*, 872 P.2d at 227. As a consequence, we held the provisions creating immunity under our GIA "must be strictly construed." Id. (citing Norman J. Singer, Sutherland Statutory Construction § 61.01 (5th ed. 1992) (statutes in derogation of the common law are to be strictly construed)). Such construction of the GIA is consistent with our precedent.

Our decisions have "fundamentally altered the common law of Colorado regarding the doctrine of sovereign immunity." *Bertrand*, 872 P.2d at 226. In Colorado, unlike other jurisdictions, the GIA creates immunity from suit. In other jurisdictions and under federal law, the sovereign "consent[s] to be sued." [4] Thus, it is accurate in those jurisdictions to conclude that "the terms of [the sovereign's] consent to be sued in any court define that court's jurisdiction to entertain that suit." Maj. op. at 276 (citing *United States v. Dalm*, 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) and cases referred to therein). However, our GIA does not grant the "consent to be sued," rather it creates "a bar" to suit. Importantly here, I believe the bar to suit is not created by section 24–10–108 but exists by the force of section 24–10–106.

Such structural differences, I conclude, are not insignificant. Moreover, it is these very differences that caution against an automatic transfer of legal doctrines or practices applicable to other jurisdictions. For example, I do not believe *United States v. Dalm*, 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) is appropriate authority for the proposition cited by the majority under our GIA. In *Dalm*, the Supreme Court upheld a Tax Court ruling dismissing the claims of a tax-

---

4. See Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1988); *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994) (state may lay its sovereign immunity aside and consent to be sued); *Smith v. Phillips*, 451 S.E.2d 309 (N.C.Ct.App.1994) (absent waiver of consent, sovereign immunity provides state, counties and public officials absolute and unqualified immunity from suits against them in their official capacities); *Erickson Oil Products v. Wisconsin*, 184 Wis.2d 36, 516 N.W.2d 755 (App.1994) (state's consent to be sued, waiving sovereign immunity, must be clearly and expressly stated); *State Bd. of Educ. v. Drury*, 263 Ga. 429, 437 S.E.2d 290 (1993) (state may not be sued without its consent under doctrine of sovereign immunity); *Norgeot v. South Dakota*, 334 N.W.2d 501, 502 (S.D.1993) ("[L]egislative action is the only means by which the doctrine of sovereign immunity can be waived."); *Denis Bail Bonds, Inc. v. Vermont*, 159 Vt. 481, 622 A.2d 495 (1993) (lawsuits against state for acts essentially governmental in nature are barred unless state waives its sovereign immunity and consents to be sued); *Community Fed. Sav. & Loan Assoc. v. Director of Revenue*, 796 S.W.2d 883 (Mo.1990) (state is entitled to invoke sovereign immunity unless it expressly consents not to do so); *Washington v. Fireman's Fund Ins. Co.*, 68 Haw. 192, 708 P.2d 129 (1985) (sovereign immunity precludes any suit against the state without the state's express consent); *Patterson v. Wilson*, 34 Pa.Cmwlth. 58, 382 A.2d 1000, 1001 (1978) ("Commonwealth enjoys absolute sovereign immunity absent legislative consent....").

---


payer because her claims were filed after "the statute of limitations [had] long since ... run." *Id.* at 598, 110 S.Ct. at 1363. The Court concluded that "[f]or the District Court to have jurisdiction over her suit for refund, Dalm was required to file a claim for refund of the tax within" the applicable limitations period. *Id.* at 609, 110 S.Ct. at 1368–69. Because Dalm "failed to comply with the statutory requirements," *id.* at 609–10, 110 S.Ct. at 1369, the Court concluded she had failed to meet the terms of the United States' "consent to be sued." Thus, Dalm's claims were outside the tax court's "jurisdiction to entertain the suit." *Id.* at 608, 110 S.Ct. at 1368. However, the Court continued, stating that Dalm's substantive claims for a tax refund under the doctrine of equitable recoupment may still be meritorious:

> Our holding today does not leave taxpayers in Dalm's position powerless to invoke the doctrine of equitable recoupment. Both the Secretary, at the administrative level, ... and a court which has jurisdiction over a timely suit for refund may consider an equitable recoupment claim for an earlier tax paid under an inconsistent theory on the same transaction.

*Id.* at 610, 110 S.Ct. at 1369. Hence, even under federal immunity law, the Court in *Dalm* did not determine that because the tax court was without jurisdiction the substantive merits of Dalm's case was lacking. I do not question the accuracy of the language cited, but I do not agree that it is applicable here.

Our district courts, courts of general jurisdiction, have jurisdiction to hear claims brought as common law claims against the state, except those expressly barred by the GIA. In contrast, the limited jurisdiction of federal trial courts exists only as a consequence of federal statute or constitution. See *E.J.R. v. District Court*, 892 P.2d 222,

—— (Colo.1995) (noting the distinction between our state district courts, courts of general jurisdiction, and lower federal courts which are all of limited jurisdiction). This distinction, coupled with our unique common law regarding sovereign immunity, makes me less ready than the majority to adopt federal precedent as the appropriate guide to resolution of our unique sovereign immunity law.

## II

Section 24–10–108, 10A C.R.S. (1988) of the GIA provides:

> Except as provided in sections 24–10–104 to 24–10–106, sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant. If a public entity raises the issue of sovereign immunity prior to or immediately after the commencement of discovery, the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity, and shall decide such issue on motion.

By its language, that section acknowledges in its first sentence that the legislative bar to suit is found in section 24–10–106.[5] The second sentence, which is at issue before us, directs trial courts to acknowledge the immunity existing as a consequence of section 24–10–106 by deciding "the issue of sovereign immunity" on pretrial motion, *if raised prior to or immediately after the commencement of discovery*.[6]

Assuming, as does the majority, that under our rules of statutory construction we look "first at the language of the statute," maj. op. at 274, and "must give statutory terminology its commonly accepted meaning," *id.*, I come

---

5. Although section 24–10–104 is also mentioned, that section allows public entities to waive the immunity provided by § 24–10–106.

6. Also, although not before us today, I believe § 24–10–108 is unclear as to *when* a motion to dismiss on the "issue of sovereign immunity" can no longer be asserted to "suspend discovery" and to require the trial court to "decide such issue on motion." I am unclear whether the term "immediately after" means the day after,

within a week of, or some other undesignated period after "the commencement of discovery." When compared to § 24–10–109 and its more definite and clear language denying jurisdiction for insufficient notice under § 24–10–109, i.e., that notice must be given "within one hundred eighty days after the date of the discovery of the injury," I conclude the General Assembly intended to create a jurisdictional prerequisite in § 24–10–109 but did not so clearly act under § 24–10–108.

to a different result. I find in the language of sections 24–10–108 and 24–10–109 more than a distinction without a difference. While I agree with the majority's interpretation that section 24–10–108 requires a "trial court to hear and decide a claim of sovereign immunity ... if [ ] raised before trial," maj. op. at 276, I conclude it merely directs trial courts to address, "on motion," the issue of whether sovereign immunity is a bar to plaintiff's claims, leaving the method of doing so to the trial courts under our rules of procedure.

### III

In *Trinity Broadcasting of Denver v. City of Westminster*, 848 P.2d 916 (Colo.1993), we held that Rule 12(b)(1) applies to motions to dismiss for failure to meet the jurisdictional notice requirement of the GIA. Relying on *Trinity*, the court of appeals held that "the proper procedure for determining a public entity's sovereign immunity is C.R.C.P. 12(b)(1), not C.R.C.P. 56." *Fogg v. Macaluso*, 870 P.2d 525, 527 (Colo.App.1993). The majority affirms the court of appeals' holding that "[w]hether a claim falls within an exception to the GIA's waiver of sovereign immunity is a question of subject matter jurisdiction and, if raised before trial, it appropriately is addressed under C.R.C.P. 12(b)(1)." Maj. op. at 277. Unlike the majority, however, I would not limit consideration of pretrial motions to Rule 12(b)(1).

In *Trinity*, a private corporation, Trinity Broadcasting of Denver, complained that the City of Westminster had allowed water to leak from its water tanks or water mains and that as a result Trinity experienced some damage to its building's foundation. At issue was whether Trinity had met the notice requirement set forth in section 24–10–109(1), 10A C.R.S. (1988), of the GIA, which provides in relevant part:

Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment ... shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. *Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.*

(Emphasis added.) We stated in *Trinity* that "the legislature characterized the notice requirement* in section 24–10–109 of the Governmental Immunity Act *as a jurisdictional prerequisite.*" *Trinity*, 848 P.2d at 924 (emphasis added). That is, if proper notice was not given, the court would have no jurisdiction over the matter. We then noted that a sovereign cannot be forced to trial without that jurisdictional prerequisite having been met. *Id.* No such "*jurisdictional* prerequisite" characterization appears in section 24–10–108.

Ultimately in *Trinity*, we held that because notice is a jurisdictional prerequisite, the trial court should treat notice matters as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).[7] From that holding, the court of appeals in this case concluded that *all* motions to dismiss under the GIA should be treated as Rule 12(b)(1) motions; and the majority affirms. I disagree. A Rule 12(b)(1) motion is appropriate to determine whether a court lacks "jurisdiction over the subject matter." I do not believe *Trinity* should be read to stand for the proposition that Rule 12(b)(1) must be applied to *substantive* elements of a governmental immunity claim.[8]

7. Rule 12(b)(1) of our rules of civil procedure provides:
"(b) ... [T]he following defenses may at the option of the pleader be made by motion: (1) Lack of jurisdiction over the subject matter...."

8. Since our Rule 12(b)(1) is identical to Fed. R.Civ.P. 12(b)(1) and our Rule 12(b)(5) is identical to Fed.R.Civ.P. 12(b)(6), we may turn, as we did in *Trinity*, to federal authorities for guidance

in construing the Colorado rules. *Trinity*, 848 P.2d at 924. In *Trinity*, we cited to a line of federal authority which states that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction should be denied if the jurisdictional issue is "intertwined with the merits of the case." See, e.g., *Tilton v. Richardson*, 6 F.3d 683, 685 (10th Cir.1993); *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir.1992); See gener-

Such a holding under section 24–10–108 would be contrary, in my view, to both the plain language of that section and our sovereign immunity jurisprudence, including our unique common law and the GIA. Because the "bar to suit" under our GIA necessarily requires a determination of immunity that is intertwined with the merits of the case, I believe a plaintiff is entitled to a full and fair hearing on the merits of his claim, a hearing that is not always guaranteed under C.R.C.P. 12(b)(1). I agree that prior to dismissal, plaintiffs should be provided with a full and fair hearing, however, contrary to the majority, I would leave the type of pretrial motion utilized to the parties and the discretion of the trial court.[9]

## IV

Because the determination as to whether a bar to Fogg's claim may exist under the GIA is so "intertwined with the merits" of his claim, I agree that the trial court's reliance upon C.R.C.P. 12(b)(1) to dismiss was in error. Accordingly, because I too would reverse and remand, I concur only in the result.

ally 2A James W. Moore, Moore's Federal Practice ¶ 12.07[2.–2] at 12–60 (2d ed. 1992).

9. My reading of §§ 24–10–108 and 24–10–109 does not limit pretrial motions to Rule 12(b)(1); our rules of procedure also contemplate other pretrial motions, including 12(b)(5) for failure to state a claim motion for summary judgment and dismissal under C.R.C.P. 56.