Urban SISNEROS and Cynthia Sisneros,
Plaintiffs–Appellants,

v.

CITY OF GRAND JUNCTION and Does
I through V, Defendants–Appellees.

No. 95CA0753.

Colorado Court of Appeals,
Div. I.

Sept. 5, 1996.

Rehearing Denied Nov. 14, 1997.

Certiorari Granted July 21, 1997.

The Frickey Law Firm, Howard Flicker, Lakewood, for Plaintiffs–Appellants.

Younge & Hockensmith, P.C., Earl G. Rhodes, Grand Junction; Daniel E. Wilson, City Attorney, Grand Junction, for Defendants–Appellees.

Opinion by Judge CRISWELL.

Plaintiffs, Urban and Cynthia Sisneros, appeal the judgment of the trial court dismissing their complaint for personal injuries against defendants, City of Grand Junction (City) and Does I through V, on the grounds that they were immune from liability based on governmental immunity. We reverse and remand for further proceedings.

On the evening of September 12, 1991, a fire truck, owned and operated by the City, responded to a report of a residential fire with its emergency lights and sirens operating. In route to the fire, an eight-foot section of hard suction hose fell off the truck and landed in the roadway, where it came to rest. Shortly thereafter, plaintiffs, while traveling in their car, struck the hose. As a result of this collision, plaintiffs suffered personal injuries and their car was damaged.

Plaintiffs commenced this action against defendants seeking compensation for their injuries. Defendants moved to dismiss plaintiffs' complaint on the basis that they were immune from suit under the Colorado Governmental Immunity Act, § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A). Ultimately, the trial court, relying upon *Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995), concluded that the fire truck was an emergency vehicle operating within the provisions of §§ 42–4–108(2) and 42–4–108(3), C.R.S. (1996 Cum. Supp.) and concluded that defendants were, therefore, immune from suit pursuant to § 24–10–106(1)(a), C.R.S. (1988 Repl.Vol. 10A).

Plaintiffs contend that the trial court erred in reaching this conclusion. We agree that, without engaging in further fact finding, the court erred in entering judgment for defendants.

The Immunity Act grants a public entity and its employees immunity from suit upon any claims that lie or could lie in tort. Section 24–10–105, C.R.S. (1988 Repl.Vol. 10A). However, § 24–10–106(1), C.R.S. (1988 Repl. Vol. 10A) contains a waiver of such immunity in certain specified instances. In relevant part, that statute provides that:

Sovereign immunity is waived by a public entity in an action for injuries resulting from:

(a) The operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment, *except* emergency vehicles operating *within the provisions* of section 42–4–108(2) and (3), C.R.S. (emphasis supplied).

The referenced statutory provisions, §§ 42–4–108(2) and 42–4–108(3), are a part of the Uniform Traffic Code (Code), which is designed to regulate traffic on a uniform basis throughout the state. *See* § 42–4–102, C.R.S. (1996 Cum.Supp.). The Code provides that a violation of the regulations adopted may constitute either a "traffic offense" or a "class 2 misdemeanor traffic offense," punishable by various penalties. Section 42–4–1701, C.R.S. (1996 Cum.Supp.).

Section 42–4–108(1), C.R.S. (1996 Cum. Supp.) makes all of the Code's provisions applicable to "the drivers of all vehicles owned or operated by ... any county, town, district, or other political subdivision of the state, subject to such *specific exceptions* as are set forth in this article with reference to authorized emergency vehicles." (emphasis supplied)

The two sub-sections referred to by the Immunity Act, §§ 42–4–108(2) and 42–4–108(3), contain such "specific exceptions." Those statutory provisions, which are the same now as they were at the time of the accident here, read, in pertinent part, as follows:

(2) The driver of an authorized emergency vehicle, when responding to an emergency call ... or when responding to ... a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions stated in this article. The driver of an authorized emergency vehicle may:

(a) Park or stand, irrespective of the provisions of this title;

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as necessary for safe operation;

(c) Exceed the lawful speeds set forth in section 42–4–1101(2) or exceed the maximum lawful speed limits set forth in section 42–4–1101(8) so long as said driver does not endanger life or property;

(d) Disregard regulations governing directions of movement or turning in specified directions.

(3) The exemptions and conditions granted in paragraphs (b) to (d), in their entirety, of subsection (2) of this section for an authorized emergency vehicle shall continue to apply to section 24–10–106(1)(a), C.R.S., only when such vehicle is making use of audible and visual signals ... and the exemption granted in paragraph (a) of subsection (2) of this section shall apply only when such vehicle is making use of visual signals ... unless using such visual signals would cause an obstruction to the normal flow of traffic....

The question presented to the trial court, then, was whether the relevant statutes render the City immune from a claim based upon injuries sustained as a result of equipment falling off an emergency vehicle when it is responding to an emergency.

■ This question involves an issue of subject matter jurisdiction for determination pursuant to C.R.C.P. 12(b)(1). That determination will not be reversed unless it is clearly erroneous. *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993).

■ In considering this issue, however, we must strictly construe the immunity statutes because they are in derogation of the common law. *Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994). Further, the primary goal in construing any statute is to determine its legislative intent, and such intent must be ascertained, primarily, from the plain and ordinary meaning of the terms used. *Fogg v. Macaluso, supra.*

Here, the pertinent statute granting immunity to the City specifically and expressly limits such immunity to those circumstances in which the emergency vehicle is "operating within the provisions of section 42–4–108(2)." And, the express provisions of § 42–4–108(2)

grant to the driver of such a vehicle the right to disregard only *specific* traffic regulations.

Given this plain language, it was determined in *Sierra v. City & County of Denver,* 730 P.2d 902, 904 (Colo.App.1986)—some ten years ago—that:

for a public entity to be immune from a claim arising from the operation of an emergency vehicle ... any violation of a traffic regulation which gave rise to the claim must have been one of those specified in § 42–4–106(2)(a) through (d) [now § 42–4–108(2)(a) through (d) ].

*See also Zapp v. Kukuris,* 847 P.2d 150 (Colo.App.1992) (citing *Sierra* with approval).

■ While not specifically expressed in *Sierra,* the quoted statement was necessarily based upon the conclusion that the Immunity Act's specific reference to § 42–4–108(2) grants to the public entity immunity under that act only in those instances in which the Code immunizes the driver of the vehicle from prosecution for a traffic offense. If § 42–4–108(2) does not prevent prosecution of the vehicle's driver, § 24–10–106(1) does not grant immunity to the public entity.

We recognize that this conclusion requires, in the case of injuries resulting from the operation of an emergency vehicle, the determination whether those injuries resulted from a violation of one of the specific traffic regulations referred to or from some other, independent, act of wrongdoing. Indeed, we acknowledge that the courts' function, at least, would have been simplified had the General Assembly granted immunity against *all* claims based upon *any* injury occasioned by the operation of an emergency vehicle. Unless we simply disregard what that legislative body has said, however, that conclusion is not sustainable.

Further, § 24–10–106(1)(a) has been amended since the *Sierra* opinion was announced, *see* Colo. Sess. Laws 1994, ch. 337 at 2556, but no substantive change has been made in its provisions. This is at least some indication that *Sierra* accurately expresses the General Assembly's intent. *See Music City, Inc. v. Estate of Duncan,* 185 Colo. 245, 248, 523 P.2d 983, 985 (1974) ("[W]here a legislature re-enacts or amends a statute and

does not change a section previously interpreted by settled judicial construction, it must be concluded that the legislature has agreed with the judicial construction.").

Nothing in *Fogg v. Macaluso, supra*, is contrary to the *Sierra* holding. In *Fogg*, a deputy sheriff had parked his patrol car on the left side of a divided highway near the median and had activated his emergency lights to aid the driver of a vehicle in the median. Such parking, even if in violation of the Code, was permitted by § 42-4-108(2)(a), provided the deputy was responding to an "emergency" within the meaning of that statute. There were, therefore, only two issues raised in or decided by *Fogg, i.e.*, whether the evidence demonstrated that an emergency existed and whether, even if so, the requirement of § 42-4-108(4), C.R.S. (1996 Cum.Supp.), that the driver of an emergency vehicle "drive with due regard for the safety of all persons," was a condition that was required to be met in order for immunity to be granted.

The issue whether an "emergency" was present was relevant in *Fogg only* because § 42-4-108(2), the statute at issue here, allows the driver of an emergency vehicle to disregard the specified regulations only when responding to an emergency. Hence, at least to this extent, the *Fogg* opinion recognizes that the existence of the conditions described in that statute is necessary in order for immunity to be recognized.

 With respect to the second issue, the *Fogg* opinion declared § 24-10-106(1)(a) to be "unambiguous" and "very clear." *Fogg v. Macaluso, supra*, 892 P.2d at 277. While that statute refers to §§ 42-4-108(2) and 42-4-108(3), it does not refer to § 42-4-108(4). And, because §§ 42-4-108(2) and 42-4-108(3) do not impose a general duty of due care, exercise of due care is not a condition to the immunity granted by § 24-10-106(1)(a).

Hence, while *Fogg* did not address the issue decided by *Sierra* and raised here, its analysis lends support to the *Sierra* conclusion, *i.e.*, that the language of the pertinent statute is unambiguous and that it must, therefore, be applied in accordance with the statute's plain meaning.

Here, because the trial court implicitly concluded that *Fogg* had the effect of overruling *Sierra*, it did not address the factual question whether plaintiffs' alleged claims arose from the violation of one or more of the traffic regulations described in § 42-4-108(2)(a) through (d), from some other act, or from a combination of both. Hence, a remand to the trial court to consider this issue is required. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra.*

The judgment of the district court is reversed, and the cause is remanded to that court for further proceedings consistent with the views set forth in this opinion.

METZGER and JONES, JJ., concur.