**CITY OF GRAND JUNCTION and Does I through IV, Petitioners,**

v.

**Urban SISNEROS and Cynthia Sisneros, Respondents.**

**No. 96SC830.**

Supreme Court of Colorado, En Banc.

March 23, 1998.

Younge & Hockensmith, P.C., Earl G. Rhodes, Lauretta A. Martin' Sullivan, Dan Wilson, City Attorney for the City of Grand Junction, Grand Junction, for Petitioners.

The Frickey Law Firm, Howard Flicker, Lakewood, for Respondents.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Sisneros v. City of Grand Junction*, 940 P.2d 984 (Colo.App. 1996), to determine whether the City of Grand Junction and Does I through IV (defendants) are immune from tort liability pursuant to the Colorado Governmental Immunity Act, sections 24–10–101 to –120, 10A C.R.S. (1988) (the GIA). Urban and Cynthia Sisneros sued defendants for damages that resulted when a hose fell from a city fire truck, allegedly causing personal injuries and property damage. The Mesa County District Court (trial court) dismissed the claim for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), finding that the GIA rendered defendants immune from suit. The court of appeals reversed and remanded for further proceedings on the issue of defendants' immunity. We hold that defendants are entitled to immunity under the GIA. Therefore, we reverse and remand to the court of appeals.

## I.

On the evening of September 12, 1991, a fire truck owned by the City of Grand Junction responded to an emergency call involving a residential fire. With its lights and sirens operating, the truck traveled south on U.S. Highway 50 towards the fire. At the crest of a hill, an eight-foot section of hard suction hose came loose from the truck and fell onto the highway. About two minutes later, Urban Sisneros drove over the hose at approximately fifty-five miles per hour. The

collision allegedly caused personal injuries as well as serious damage to the car.[1]

As a result, Urban Sisneros and Cynthia Sisneros, a passenger in the car, brought a negligence claim against defendants. Defendants filed a motion to dismiss, arguing that they were immune from tort liability under the GIA, specifically pursuant to the emergency vehicle exception in section 24–10–106(1)(a), 10A C.R.S. (1988). After initially denying the motion to dismiss, the trial court held that the emergency vehicle exception conferred immunity and dismissed the claim.[2] The court of appeals reversed, holding that dismissal was improper because it was not clear that the emergency vehicle exception applied. Consequently, the court of appeals remanded for further proceedings on the issue of defendants' immunity.

## II.

Subject to certain conditions, the GIA establishes tort immunity for public entities. *See* § 24–10–105, 7 C.R.S. (1997). However, section 24–10–106(1)(a) waives immunity for torts involving the operation of motor vehicles. The same section also provides an exception to the waiver, thereby granting immunity for emergency vehicles "operating within the provisions of section 42–4–106(2) and (3)."[3] *See* § 24–10–106(1)(a). Section 42–4–106(2), (3), 17 C.R.S. (1984 & 1991 Supp.), provides in relevant part as follows:

(2) The driver of an authorized emergency vehicle, when responding to an emergency call, or when in pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privi-

leges set forth in this section, but subject to the conditions stated in this article. The driver of an authorized emergency vehicle may:

(a) Park or stand, irrespective of the provisions of this title;

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c) Exceed the maximum speed limits so long as he does not endanger life or property;

(d) Disregard regulations governing directions of movement or turning in specified directions.

(3) The exemptions granted in paragraphs (b) to (d) of subsection (2) of this section to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals. . . .

■ Statutes must be construed as a whole. *See Walgreen Co. v. Charnes*, 819 P.2d 1039, 1044 (Colo.1991). Therefore, when interpreting a statute, we must strive to give consistent, harmonious, and sensible effect to all of its parts. *See Graven v. Vail Assocs., Inc.*, 909 P.2d 514, 519 (Colo.1995). A construction that leads to an absurd result will not be followed. *See McClellan v. Meyer*, 900 P.2d 24, 30 (Colo.1995). A court's primary task in construing a statute is to determine and give effect to the intent of the legislature. *See Christie v. Coors Transp. Co.*, 933 P.2d 1330, 1332 (Colo.1997). To determine legislative intent, we must consider the underlying purpose or policy of the statute. *See Thurman v. Tafoya*, 895 P.2d 1050, 1055 (Colo.1995). According to the GIA's "Declaration of policy," the General

---

1. Sisneros, who was driving a friend's car, apparently did not brake before the collision, claiming that he did not see the hose because of the incline of the hill. The hose, which measured six inches in diameter and was made primarily of wire and hard steel, struck the front wheel of the car and caused significant damage.

2. Defendants first filed a motion to dismiss for failure to state a claim, pursuant to C.R.C.P. 12(b)(5). This motion was denied. On August 25, 1993, the trial court, acting *sua sponte*, revisited its order but affirmed the denial. Defendants then filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to C.R.C.P. 12(b)(1). After an evidentiary hearing, the trial

court denied the motion. Defendants filed another motion for reconsideration, citing this court's decision in *Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995). The trial court then dismissed the claim, holding that defendants were entitled to immunity because the fire truck qualified as an emergency vehicle "operating within the provisions of section 42–4–106(2) and (3)." *See* § 24–10–106(1)(a).

3. Since this case arose, § 42–4–106 has been relocated to § 42–4–108, 11 C.R.S. (1997). However, we refer to former § 42–4–106, which governs the case at bar.

Assembly provided sovereign immunity for public entities because "the state and its political subdivisions provide essential public services and functions ... that unlimited liability could disrupt or make prohibitively expensive." § 24–10–102, 10A C.R.S. (1988).

■ In this case, however, the court of appeals rejected the trial court's conclusion that the GIA confers immunity on the defendants. Relying on *Sierra v. City and County of Denver*, 730 P.2d 902 (Colo.App.1986), the court of appeals held that the emergency vehicle exception provides immunity "only in those instances in which [section 42–4–106(2) ] immunizes the driver of the vehicle from prosecution for a traffic offense." *Sisneros*, 940 P.2d at 986. We disagree.[4]

In *Fogg v. Macaluso*, 892 P.2d 271 (Colo. 1995), we explained that the GIA "establishes immunity ... when public employees are pursuing criminals or are responding to fire alarms." *Id.* at 275. In that case, a police officer, who was assisting a stranded motorist, parked his patrol car in the left lane of Interstate 25 with its emergency lights flashing. While passing in the left lane, Fogg struck the rear of the patrol car. The court of appeals affirmed the dismissal of Fogg's tort claim. Although we remanded for further proceedings, we clarified the rationale underlying the emergency vehicle exception: "[Emergency call responses] involve temporally urgent events and require rapid responses. In such circumstances, a driver may be less able to exercise proper care. In order to facilitate the public benefit gained from quick response to these situations, the legislature has created tort immunity for emergency vehicle drivers." *Id.* (footnote omitted).

While *Fogg* involved an emergency response by a police officer, its reasoning applies with equal force to firefighters. Clearly, the public benefits when firefighters respond to emergencies immediately. However, because of the urgent need for such a rapid response, it may be difficult to exercise due care. To remedy this problem, the General Assembly created the emergency vehicle exception, which allows firefighters to respond to emergencies quickly and efficiently, without fear of tort liability.[5]

The exception provides immunity only if emergency vehicles are "operating within the provisions of section 42–4–106(2) and (3)." § 24–1–106(1)(a). For purposes of the GIA, section 42–4–106(2) and (3) defines when a vehicle controlled by a public entity operates as an emergency vehicle.[6] Section 42–4–106(2) indicates that an emergency vehicle falls within the exception "when responding to an emergency call, or when in pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm." Section 42–4–106(3) simply requires that emergency vehicles make appropriate use of their audible and visual signals.

■ Here, it is undisputed that at the time of the incident, the fire truck was responding to a fire alarm. Moreover, it is clear that the truck was appropriately using its emergency lights and sirens. Therefore, when the hard suction hose came loose and fell onto the highway, the fire truck was operating as an emergency vehicle in compliance with section 42–4–106(2) and (3). Under these circumstances, the emergency vehicle exception shields defendants from tort liability, thereby allowing them to perform their duties quickly and effectively. As we explained in *Fogg*, the General Assembly created the emergency vehicle exception to encourage precisely the kind of immediate response provided by defendants in this case. Accordingly, we hold

---

**4.** We noted previously that the instances "enumerated in section 42–4–106(2) *illustrate* the legislature's intent to create tort immunity for public employees reacting to events that require immediate response." *Fogg*, 892 P.2d at 275 (emphasis added). Limiting immunity only to those instances would defeat legislative intent.

**5.** However, the GIA places special limits on willful and wanton conduct. *See* § 24–10–105, 7 C.R.S. (1997).

**6.** Section 42–4–106(2) has two distinct purposes. First, it functions as part of the Uniform Safety Code of 1935 (the Code). *See* § 42–4–101 to – 2001, 11 C.R.S. (1997) (containing the bulk of the Code's traffic regulations). Second, it functions, by reference, as part of the GIA. This case deals solely with the second function of § 42–4– 106(2).

that the exception confers immunity on the defendants.

### III.

We hold that because the fire truck was responding to an emergency in compliance with the provisions of section 42–4–106(2) and (3), defendants are immune from tort liability. Accordingly, we reverse and remand to the court of appeals for proceedings consistent with this opinion.