Thomas **SMITH**, Plaintiff–Appellee
and Cross–Appellant,

v.

**FARMERS INSURANCE EXCHANGE**
and Mid–Century Insurance Company,
Defendants–Appellants and Cross–Appellees.

No. 97CA0439.

Colorado Court of Appeals,
Div. V.

Oct. 29, 1998.

Rehearing Denied Jan. 21, 1999.

Certiorari Granted Sept. 7, 1999.

**72**

Steven T. Nolan, P.C., Steven T. Nolan, Colorado Springs, Colorado; Winston & Winston, P.C., Joseph R. Winston, Hayden Winston, Colorado Springs, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Retherford, Mullen, Johnson & Bruce, L.L.C., Neil C. Bruce, Anthony A. Johnson, Colorado Springs, Colorado for Defendants–Appellants and Cross–Appellees.

Opinion by Judge TAUBMAN.

In this action for breach of an insurance contract, defendants, Farmers Insurance Exchange and Mid–Century Insurance Company (insurers), appeal from a jury verdict in favor of plaintiff, Thomas Smith, awarding him $33,300.89. Smith cross-appeals from the trial court's denial of his request for treble damages, statutory interest, and attorney fees. We affirm in part, reverse in part, and remand for further proceedings.

Farmers Insurance Exchange and Mid–Century Insurance Company are wholly-owned subsidiaries of Farmers Insurance Group. As pertinent here, Farmers Insurance Exchange, on behalf of Mid–Century, adjusted all claims presented by Smith, the insured, after he sustained injuries in an automobile accident in Colorado Springs.

Smith sought pre-approval from insurers for medical and rehabilitation expenses in connection with a second surgery. Insurers refused to pay the bills, claiming that Smith had exhausted his available policy limits.

After determining that Medicare would pay for his second surgery, Smith submitted his medical and rehabilitation bills to Medicare for payment. Although the amount of benefits claimed under the policy was $33,300.89, Medicare paid Smith's providers $14,772. Medicare now has a lien for that amount.

Smith instituted this action asserting that insurers' refusal to pay for all his medical and rehabilitation expenses constituted (1) a breach of the Colorado Automobile Accident Reparations Act, §10–4–701, et seq., C.R.S. 1998 (No–Fault Act); (2) a breach of contract based on the policy; and (3) bad faith breach of an insurance contract.

In his first claim, Smith alleged that his health care expenses were covered under §10–4–706, C.R.S.1998. Smith alleged in his second claim that the language of the policy was broader than the statutory language and provided additional coverage for his health care expenses. Finally, in his bad faith breach of insurance contract claim, he asserted that insurers had acted in bad faith in denying payment for his health care expenses.

The jury returned a verdict for Smith for $33,300.89 on the breach of contract claim and for $1,700 on the bad faith breach of contract claim. However, the jury found in favor of insurers on the No–Fault Act claim. Insurers' motion for new trial was deemed denied pursuant to C.R.C.P. 59(j), and this appeal followed.

On appeal, insurers do not challenge the jury verdicts in favor of Smith, but, rather, dispute only the measure of damages on the breach of contract claim. In his cross-appeal Smith appeals only from the trial court's denial of his request for treble damages, statutory interest, and attorney fees.

### I. Damages for Breach of Contract

Insurers initially contended that because damages were awarded in excess of Smith's actual loss, the trial court erred in denying their request for a new trial on that issue. Following oral argument and the submission of supplemental briefs requested by the court, insurers now state that a new trial on the issue of damages is not necessary and that "the errors asserted on appeal could be corrected by amendment of the jury's verdict to reflect the amount paid by Medicare on behalf of the plaintiff."

Insurers assert that when a provider of medical services agrees to accept payment from Medicare, it is precluded from pursuing the remaining balance from the Medicare beneficiary. Thus, insurers argue, Smith, as a Medicare recipient, is entitled to recover only an amount necessary to repay Medicare and compensate him for co-payments and deductible amounts he paid. We agree.

██ An insurance policy is a contract and should be construed in accordance with general principles of contractual interpretation. *Wota v. Blue Cross & Blue Shield,* 831 P.2d 1307 (Colo.1992). Thus, if there is a breach of a policy's terms, a plaintiff may recover the amount of damages that is required to place him or her in the same position he or she would have occupied had the breach not occurred. In other words, a plaintiff may recover only the amount of actual loss suffered. *Colorado National Bank v. Friedman,* 846 P.2d 159 (Colo.1993)(damages that are speculative, remote, imaginary, or impossible of ascertainment cannot be recovered).

██ Moreover, damages are not recoverable for losses beyond an amount that a plaintiff can establish with reasonable certainty by a preponderance of evidence. *See Pomeranz*

*v. McDonald's Corp.,* 843 P.2d 1378 (Colo. 1993).

What the plaintiff's actual loss is here depends on whether, under the Medicare statutory scheme, he has any obligation to pay providers the difference between the amount of their bills and the amount Medicare actually paid.

Although Medicare was originally established as a primary payer of medical bills of Medicare beneficiaries, the governing statute was amended in 1980 to establish Medicare as a secondary payer, where "payment has been made or can reasonably be expected to be made promptly (as determined in accord with regulations) ... under an automobile or liability insurance policy ... or under no-fault insurance." 42 U.S.C. §1395y(b)(2)(A) (1994).

If an insurer is liable to its insured but does not make prompt payment, federal law provides that Medicare may make a "conditional" payment on behalf of the insured. The payment is conditioned on reimbursement from the third party insurer once payment has been made or can reasonably be expected to be made. 42 U.S.C. §1395y(b)(2)(B)(i) (1994).

As pertinent here, 42 U.S.C. §1395cc(a)(1)(A) (1994) requires that "participating providers" of Medicare services must agree "not to charge ... any individual (or any other person) for items or services for which such individual is entitled to have payment made [by Medicare]."

42 C.F.R. §411.31(b) (1997) provides in pertinent part:

> With respect to ... no-fault insurers ... a provider or supplier may bill its full charges and expect those charges to be paid unless there are limits imposed by laws other than [the Medicare statute] or by agreements with the third party payer.

Also, 42 C.F.R. §411.51(a) provides that "the beneficiary is responsible for taking whatever action is necessary to obtain any payment that can reasonably be expected under no-fault insurance."

Insurers contend that, because 42 U.S.C. §1395cc (1994) prohibits a provider from seeking additional payment from a Medicare

beneficiary once the provider has accepted a Medicare payment, Smith has no further obligation to pay his providers, and his recovery should thus be limited to the amount paid by Medicare plus the amount of any deductible or coinsurance payment.

Smith, however, contends that the Medicare regulations require him to collect from his insurer the difference between the amount of providers' bills and the amount Medicare paid as a "conditional payment," and the Medicare secondary payer statute does not limit his liability to the amount paid by Medicare. Thus, he argues, because he still has obligations to the providers, he may recover from insurers the full amount of his medical and rehabilitation expenses, $33,-300.89.

Our research has not revealed any reported case addressing this issue.

Because insurers' interpretation will result in Smith recovering an amount equal to his actual losses and is consistent with the plain language of 42 U.S.C. §1395cc(a)(1)(A), we conclude that their interpretation of the Medicare provisions is correct.

A court's primary task in construing a federal statute is to give effect to Congressional intent. This is best achieved by looking to the plain language of the statute. See Mass v. Martin Marietta Corp., 805 F.Supp. 1530 (D.Colo.1992). Statutes must be construed as a whole. Therefore, when interpreting a statute, we must give consistent, harmonious, and sensible effect to all of its parts. See City of Grand Junction v. Sisneros, 957 P.2d 1026 (Colo.1998).

Pursuant to the plain language of 42 U.S.C. §1395cc, once a provider agrees to accept a Medicare payment, it abandons all right to further payment from the Medicare beneficiary.

■ Additionally, 42 U.S.C. §1395y, the secondary payer provision, provides that when there is no-fault insurance, the insurer is the primary payer. If an insurer does not make prompt payment, a provider may bill Medicare, as a secondary payer, for a conditional payment, and then Medicare may seek to recover from the insurer the amount it paid to the provider. Interpreting these pro-

visions together, we conclude that if a provider agrees to accept a Medicare payment, it may not pursue any claim against the beneficiary, although it may seek to recover its full charges from the insurer.

This interpretation gives meaning to both applicable statutes and regulatory provisions for three reasons. First, it comports with the secondary payer provision because it allows a provider to bill Medicare for a conditional payment. Second, this interpretation is in accord with 42 U.S.C. §1395cc, because it ensures that once a provider agrees to accept a Medicare payment, the Medicare beneficiary will have no further liability. Third, this interpretation is consistent with 42 C.F.R. §411.31, because it allows a provider to bill its full charges to an insurer.

Finally, 42 C.F.R. §411.51(a) does not require a contrary result. That regulation only obligates the beneficiary to assist Medicare in recovering from the insurer the amount of the conditional payment and to assist the provider in recovering any additional amount it has expended.

Accordingly, a provider would not be limited to receive a partial payment from Medicare, but could receive full reimbursement for its expenses from the insurer. See 1 Medicare & Medicaid Guide (CCH) §4142 (1995). See also 42 C.F.R. 411.54 (1997) (limitation on charges when a beneficiary has a pending claim against an insurer); Rybicki v. Hartley, 792 F.2d 260 (1st Cir.1986) (once Medicare has made payment, the hospital or doctor accepting the money agrees to abandon all rights to further payment from the beneficiary).

■ Insurers concede that Smith is entitled to recover as damages an amount sufficient to pay him and his subrogee, Medicare, for the amounts Medicare expended in satisfaction of the medical bills.

Here, the providers sought payment from Medicare, Medicare paid $14,772 on Smith's behalf, and Medicare had a lien against Smith for that amount. The providers are prohibited by 42 U.S.C. §1395cc from seeking further payment from Smith. It logically follows that Smith, as beneficiary, can recover damages against insurers only for that

amount, plus the amount of any deductible and co-payment because his loss is limited to the $14,772 paid by Medicare.

We therefore conclude that the damage award was erroneous as a matter of law and that Smith's judgment should be reduced to $14,772, plus the amount of any co-payments and deductibles.

*Barnett v. American Family Mutual Insurance Co.*, 843 P.2d 1302 (Colo.1993), relied upon by Smith, does not cause us to change our conclusion. There, the supreme court held that a set-off clause allowing an insurer to set off Social Security disability benefits from uninsured/underinsured motorist coverage was in contravention of public policy. The supreme court noted that, as a general rule, the No–Fault Act does not require insurance benefits to be set off by either federal or state governmental benefits.

■ However, *Barnett* is distinguishable because the supreme court noted there that the set-off clause at issue could eliminate entirely the insurer's liability to provide uninsured/underinsured motorist coverage. Here, in contrast, we hold only that Smith may recover his actual losses. Since Smith's providers may seek full reimbursement of their expenses from insurers, pursuant to 42 U.S.C. §1395y, no windfall will accrue to the insurers.

Because of insurers' concession that Smith did incur covered health care expenses of $14,772, we need not address their remaining contention that Smith is entitled only to nominal damages.

## II.  Damages Under No–Fault Act

On cross-appeal, Smith contends that the trial court erred in refusing to award him treble damages, 18 percent statutory interest, and attorney fees as required by the No–Fault Act because that statute is incorporated by law into the policy at issue here.

Insurers respond that these statutory provisions apply only to the minimum coverage requirements of the No–Fault Act, and that because Smith's favorable jury verdict was on his breach of contract claim, rather than his statutory claim, he is not entitled to receive treble damages, statutory interest, and attorney fees. We agree with insurers' interpretation.

The No–Fault Act was originally enacted in part to avoid inadequate compensation to victims of automobile accidents. It is incorporated as part of every auto insurance policy and governs in any conflict between the act and the insurance policy. *See Marquez v. Prudential Property & Casualty Insurance Co.*, 620 P.2d 29 (Colo.1980).

Section 10–4–708(1.8), C.R.S.1998, provides in pertinent part:

The insurer shall pay interest to the insured on the benefits recovered at a rate of eighteen percent per annum, with interest commencing from the date the benefits recovered were due. In addition, in the event of willful and wanton failure of the insurer to pay such benefits when due, the insurer shall pay to the insured, in addition to any other amounts due to the insured under this subsection, an amount which is three times the amount of unpaid benefits recovered in the proceeding.

Further, §10–4–708(1.7), C.R.S.1998, allows the court to award reasonable attorney fees to successful plaintiffs, provided that any such award is in direct proportion to the insured's success in the proceeding.

In construing statutory provisions, our obligation is to give full effect to the legislative intent. *Conte v. Meyer*, 882 P.2d 962 (Colo. 1994). If the legislative intent is immediately conveyed by the commonly understood and accepted meaning of the statutory language, we need look no further and must give effect to the statute as written. *Colby v. Progressive Casualty Insurance Co.*, 928 P.2d 1298 (Colo.1996).

■ To understand the provisions of §10–4–708(1.8) concerning interest and treble damages and §10–4–708(1.7) concerning attorney fees, we must review the statutory provisions in context. Section 10–4–708(1), C.R.S.1998, provides that "payment of benefits under the coverages enumerated in §10–4–706(1)(b) to (1)(e) ... shall be made on a monthly basis." These cited sections, in turn, set forth the minimum coverages re-

quired for compliance with the personal injury protection provisions of the No–Fault Act.

Thus, in context, the reference in §10–4–708(1.8) to "benefits recovered" must refer to the minimum requirements of coverage under the No–Fault Act. Similarly, the reference to the "party claiming the benefits" in §10–4–708(1.7)(a), C.R.S.1998, again must be to the minimum requirements of coverage under the No–Fault Act.

Contrary to Smith's argument, §10–4–710, C.R.S.1998, does not require a different result. That statute provides in pertinent part:

(1) Nothing in this part 7 shall be construed to prohibit the issuance of policies providing coverages more extensive than the minimum coverages required under this part 7 nor to require the segregation of such minimum coverages from other coverages in the same policy.

Here, insurers provided broader coverage under the insurance policy than was required by statute. Indeed, it is undisputed that the jury found against Smith on his statutory claim and in his favor on his breach of contract claim. Thus, the verdict in Smith's favor was not based on failure to comply with the minimum coverage requirements of the No–Fault Act.

Furthermore, limiting the provisions of §10–4–708(1.7) and §10–4–708(1.8) to statutorily required minimum benefits does not require the segregation of such minimum coverages from other coverages in the same policy. Just as insurers are permitted to provide more extensive coverage than the minimum coverages required, they may also provide by contract that insureds would be entitled to recover treble damages, interest, and attorney fees for failure to pay promptly the amounts of the coverage under a policy in excess of the minimums required by statute.

Thus, we conclude that the trial court did not err in denying Smith's claim for treble damages, statutory interest, and attorney fees.

In light of this disposition, we need not address Smith's other contentions raised in his cross-appeal.

The judgment in favor of Smith is reversed in part, and the trial court is directed to enter judgment in his favor in the amount of $14,772, plus the amount of any deductibles and co-payments he actually paid. The judgment denying Smith's request for treble damages, statutory interest, and attorney fees is affirmed. The cause is remanded for further proceedings consistent with this opinion.

Judge ROTHENBERG and Judge VOGT concur.