**GINNY'S KIDS INTERNATIONAL, INC., Plaintiff–Appellant,**

v.

**OFFICE OF the SECRETARY OF STATE, State of Colorado, Defendant–Appellee.**

No. 99CA2265.

Colorado Court of Appeals, Div. IV.

Nov. 24, 2000.

Frie & Arndt, LLP, Robert G. Frie, Stephen C. Fauver, Arvada, CO, for Plaintiff–Appellant.

Ken Salazar, Attorney General, Maurice G. Knaizer, Assistant Attorney General, Denver, CO, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

Plaintiff, Ginny's Kids International, Inc. (GKI), appeals the determination of an Administrative Law Judge (ALJ) that upheld the decision of the Colorado Secretary of

State, denying GKI's application for a bingo-raffle license under § 12–9–104, C.R.S.2000. We affirm.

In 1982, an unincorporated group decided to create a program called "Ginny's Kids" to raise funds to send children with cancer and other life-threatening diseases on "dream vacations." Soon thereafter, Ginny's Kids became a program of the Arvada Kiwanis Club. The club raised money for the Ginny's Kids program through raffles and placed the proceeds in a separate account to be used solely for the purposes of Ginny's Kids.

In 1988, the club formed the Kiwanis Club of Arvada Foundation (Foundation) as a tax-exempt charitable organization. The creation of the Foundation allowed individuals who contributed to Kiwanis activities to deduct their contributions from their income tax returns. The articles of incorporation and by-laws of the Foundation gave it authority to raise and expend money in the name of Ginny's Kids and all money so raised was likewise kept in a separate account.

In 1996, some members of the Foundation wanted to expand the use of Ginny's Kids' funds for purposes other than "dream trips." Those that opposed such expansion formed GKI as a separate charitable organization to pursue the original objectives of the group, and the Foundation thereafter transferred to GKI all of the funds in its bank accounts that were attributable to Ginny's Kids activities. The Foundation amended its by-laws to exclude any reference to Ginny's Kids, but continued to operate as a charitable organization.

In 1998, GKI filed an application with the Secretary for a bingo-raffle license. The Secretary denied the application, asserting that GKI had not existed for five years as required by § 12–9–104, C.R.S.2000. GKI then requested a hearing before an ALJ, who upheld the Secretary's decision. This appeal followed.

GKI contends that the ALJ erred in concluding that it was not entitled to a bingo-raffle license because it had not been in existence for five years. Specifically, GKI argues that it is a successor organization to the Foundation and that, therefore, § 12–9–104 permits it to add the time its predecessor had been in existence to its own time in existence to meet the five-year requirement.

Alternatively, GKI contends that it is essentially the same organization that began in 1982, with the same people, purposes, and functions, and that during the time it was affiliated with the Kiwanis Club and the Foundation it operated independently. Therefore, it argues that the time before its incorporation should be counted toward the five-year requirement. We disagree with both contentions.

■ A reviewing court may reverse an administrative agency's determination if the court finds that the agency acted in an arbitrary and capricious manner, made a determination that is unsupported by the evidence in the record, erroneously interpreted the law, or exceeded its constitutional or statutory authority. Section 24–4–106(7), C.R.S. 2000; *McClellan v. Meyer,* 900 P.2d 24 (Colo. 1995).

■ When presented with an issue that involves statutory construction, our review is *de novo. Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). Our primary task in construing a statute is to determine and give effect to the intent of the General Assembly. *Christie v. Coors Transportation Co.,* 933 P.2d 1330 (Colo.1997).

■ To discern that intent, we look first to the plain language of the statute and interpret statutory terms in accordance with their commonly accepted meanings. *Sears v. Romer,* 928 P.2d 745 (Colo.App.1996). A strained or forced construction of a statutory term is to be avoided, and we must look to the context in which a statutory term is employed. *Miller v. Byrne,* 916 P.2d 566 (Colo.App.1995).

■ Further, we must construe the statute as a whole so as to give consistent, harmonious, and sensible effect to all its parts and, if possible, give effect to every word in the statute. *City of Grand Junction v. Sisneros,* 957 P.2d 1026 (Colo.1998).

Section 12–9–104(1), C.R.S.2000, provides that a bingo-raffle license may be issued to:

Any bona fide chartered branch, lodge, or chapter of a national or state organization or any bona fide religious, charitable, labor, fraternal, educational, voluntary firefighters', or veterans' organization or any association, successor, or combination of association and successor of any of the said organizations that operates without profit to its members and that has been in existence continuously for a period of five years immediately prior to the making of application for a bingo-raffle license. . . .

The statute thus limits the type of organizations to which a license may be issued. Under the statute, there are three distinct groups of organizations that can receive a license: (1) bona fide chartered branches, lodges, or chapters of national or state organizations; (2) bona fide religious, charitable, labor, fraternal, educational, voluntary firefighters' or veterans' organizations; or (3) any association, successor, or combination of association and successor, of any of the preceding types of organizations. In addition, the organization must also operate without profit to its members and have been in continuous existence for the five years immediately prior to making its application.

### A.

■ Addressing GKI's contention that it is a "successor" organization to the Foundation, we note that the term "successor" is not defined in the statute. We interpret the statute's reference to a successor organization to mean an organization that either: (1) completely takes the place of another already qualified organization; or (2) comes into being through a consolidation or through combining multiple qualified organizations. We so conclude for several reasons.

*Black's Law Dictionary* 1446 (7th ed.1999) defines "successor" as one who "succeeds to the office, rights, responsibilities or a place of another; one who replaces or follows another," and with reference to corporations, "successor" is defined as another corporation which through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation.

These definitions speak not only to entities or persons, but also to functions or activities. However, in our view, we are required to limit the definition here to those that pertain to entities or persons. We so conclude for a number of reasons.

The statute speaks in terms of granting licenses to organizations, not to licensing their functions or activities. It describes the types of entities that may receive licenses. If the General Assembly had intended to grant licenses with reference to particular functions or activities of organizations, it would have so stated, and would have structured the statute differently.

This interpretation is confirmed by reviewing the five-year requirement contained in the statute. The term "has been in existence continuously" logically refers to the existence of organizations, not to functions or activities thereof.

Further, to construe the license as pertaining to functions and activities rather than to organizations would allow multiple licenses, in violation of statutory and constitutional provisions. *See Northern Colorado Chapter, American Historical Society of Germans from Russia v. Meyer,* 794 P.2d 1025 (Colo. App.1989) (provisions limit organizations to one license each).

Hence, we do not perceive that we should read the term "successor" to include an assumption of certain functions, activities, or parts of an organization.

Applying the definition we have chosen here, we conclude that a person who "succeeds to the office" of another, or "to the place of another," to use the dictionary terms, necessarily succeeds to the whole office or place, not simply to part of its function or activities. We note that one cannot be a successor to an organization, as opposed to succeeding to its functions, without completely taking its place.

GKI did not completely replace the Foundation. Rather, it broke away from the Foundation and assumed one of its previous functions or activities. The Foundation continues to exist for other charitable purposes. Further, GKI was not the result of a consolidation or combination of charitable organiza-

tions, but rather it incorporated after disassociating itself from the Foundation and the Arvada Kiwanis Club.

Thus, we conclude that GKI is not a successor organization as contemplated by the statute. Hence, it cannot count the years it existed as part of the Foundation or the Arvada Kiwanis Club to meet the five-year requirement.

GKI nevertheless argues that it should qualify as a successor because it completely took over the Foundation's role with respect to the resources, members, and activities that carried out the mission of Ginny's Kids. However, this emphasis on the function of the organizations is again misplaced. As noted, the statute refers exclusively to organizations, not their functions. Thus, because the Foundation continues to exist, even though its functions have been diminished, GKI cannot be considered a successor to the Foundation.

### B.

■ We likewise reject GKI's contention that the years prior to its incorporation should be counted toward the five-year requirement because it has operated continuously as an independent association since 1982.

It is undisputed that GKI is a bona fide charitable organization and, thus, is one of the types of organization that are permitted to have a bingo-raffle license under the statute.

It is also undisputed that the same group of people who now operate GKI began the Ginny's Kids program in 1982 with the same charitable purposes. However, the record indicates that, until it incorporated in 1996, the program operated as a committee or subgroup of the Arvada Kiwanis Club or the Foundation. Prior to incorporation, the program did not have its own by-laws. The Foundation's by-laws, however, made specific reference to Ginny's Kids.

In addition, although the funds were segregated from other Foundation money, all funds raised by the Ginny's Kids program were held in the Foundation's bank accounts. Further, the press clippings recounting various trips that Ginny's Kids sponsored always referred to it as part of the Arvada Kiwanis Club.

Therefore, we conclude that, contrary to GKI's assertion, Ginny's Kids was not an independent organization until it incorporated in 1996. And, although GKI is a bona fide charitable organization, it cannot count the time the Ginny's Kids' program operated as a part of the Arvada Kiwanis Club or the Foundation toward the five-year statutory requirement.

Consequently, we perceive no error in the denial of GKI's application for a bingo-raffle license.

The order is affirmed.

MARQUEZ, J., concurs.

TAUBMAN, J., dissents.

Judge TAUBMAN dissenting.

Because I believe that Ginny's Kids International, Inc., (GKI) properly qualifies as a "successor" to the Kiwanis Club of Arvada Foundation (Foundation) pursuant to § 12–9–104(1), C.R.S.2000, I respectfully dissent. Specifically, I disagree with the majority's narrow interpretation of the word "successor," which I believe is at odds with the plain meaning of that word.

Here, there is no dispute as to the relevant facts as found by the Administrative Law Judge (ALJ) and set forth as follows. In 1988, the Kiwanis Club of Arvada formed the Foundation so that individuals who contributed to the Kiwanis Club activities for Ginny's Kids could deduct their contributions from their income tax. The articles of incorporation and bylaws of the Foundation specifically provided that it was authorized to raise and expend funds in the name of Ginny's Kids International, and that Ginny's Kids' money was to be kept in a separate account to be used solely for the Ginny's Kids' purpose of making gifts to terminally ill children.

In October 1996, GKI was formed as a separate charitable organization. Its purpose was the same as it was when it was part of the Foundation, i.e., to assist terminally ill children or their families. On April 2, 1997,

the Kiwanis Club of Arvada transferred to GKI all of the funds in the separate bank account which the Foundation had maintained for Ginny's Kids' purposes.

Both the Kiwanis Club of Arvada and the Foundation continue to exist, but neither conducts activities related to Ginny's Kids.

The dispositive issue here is the interpretation of § 12–9–104(1), particularly the definition of the word "successor" in that statute. That statute provides that a bingo-raffle license may be issued to a variety of non-profit organizations:

> or any association, successor, or combination of association and successor of any of the said organizations that operates without profit ... and that has been in existence continuously for a period of five years immediately prior to the making of application for a bingo-raffle license....

Thus, as the majority notes, a bona fide charitable organization, successor, or combination of association and successor may qualify for a bingo-raffle license.

Applying the plain meaning of the word "successor," the majority concludes that the statute's reference to a successor organization means an organization that either completely takes the place of another already qualified organization or comes into being through a consolidation or through combining multiple qualified organizations.

As noted, I believe that this is an overly narrow interpretation of the plain meaning of the word "successor." According to *Black's Law Dictionary* 1446 (7th Ed.1999), the word "successor" means "a person who succeeds to the office, rights, responsibilities or a place of another; *one who replaces or follows another.*" (emphasis added) It also means "a corporation that, through amalgamation, consolidation, or *other assumption of interests,* is vested with the rights and duties of an earlier corporation." (emphasis added) Further, *Webster's Third New International Dictionary* 2282 (1986) defines "successor" as "one that follows; especially, a person who succeeds to a throne, title, or a state or is elected or is appointed to an office, dignity, or *other position vacated by another.*" (emphasis added)

In my view, these definitions do not require that, to be a successor, a new organization must completely replace a prior organization. Indeed, according to *Black's Law Dictionary,* a successor may be one "who replaces or follows another." The quoted *Webster's* definition is of similar import.

Here, GKI is without question an organization that replaces or follows the Foundation with respect to the activities of Ginny's Kids. It is also an organization that has fulfilled the function of the Foundation which has vacated its responsibilities with respect to Ginny's Kids.

Nothing in the plain meaning of the statute provides that a successor organization must completely replace its predecessor.

To so hold has unduly restrictive consequences. For example, if Mile High United Way, which has been in existence a substantial period, were to spin off some of its activities into a new organization, that new organization would not be able to obtain a bingo-raffle license until that new organization itself had been in existence for five years. Such interpretation would ignore the apparent legislative purpose of ensuring that bingo-raffle licenses be issued to non-profit organizations with a record of stability and probity.

More significantly, such a construction of the term "successor" is inconsistent with the plain language of § 12–9–104(1), which specifically contemplates that the five-year requirement apply not only to organizations but to their successors or combinations of associations and successors. As interpreted by the majority, the statute is robbed of a significant core of its plain meaning.

Accordingly, because it is clear beyond peradventure that GKI and the Foundation have been in existence continuously for a period of more than five years immediately preceding GKI's application for a bingo-raffle license, I would hold that such license should have been granted. Thus, I would reverse the order and remand with directions to issue the requested license.