24CA1544 Malott v Palisade 07-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1544
Mesa County District Court No. 22CV30392
Honorable Valerie J. Robison, Judge

---

Jeffrey Malott,

Plaintiff-Appellant,

v.

Town of Palisade Fire Department,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE MEIRINK
Freyre and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

---

Killian, Davis, Richter & Fredenburg, PC, Damon Davis, Joseph L. Fredenburg, Grand Junction, Colorado, for Plaintiff-Appellant

Tucker Holmes, P.C., Bradley D. Tucker, Michael T. Sullivan, Centennial, Colorado, for Defendant-Appellee

¶ 1     After plaintiff, Jeffrey Malott, sued defendant, the Town of Palisade Fire Department (Fire Department), for negligence, the Fire Department moved to dismiss the claim. The district court concluded that the claim was barred by the emergency vehicle exception of the Colorado Governmental Immunity Act (CGIA) and therefore granted the Fire Department's motion. Malott now appeals that decision. We affirm.

## I.    Factual Background

¶ 2     Early on October 28, 2019, Mallot was driving eastbound on I-70. The weather was poor, and the road conditions were icy. Corey Massey, a firefighter employed by the Fire Department, was driving ambulance number 41 (Ambulance 41) on the same stretch of I-70 to respond to an emergency rollover crash.

¶ 3     The Fire Department acquired Ambulance 41 in 2018. Ambulance 41 was unique because it had an automatic chain system that could deploy chains on the ambulance's tires to help with traction during adverse weather conditions. Massey was aware that Ambulance 41 had the automatic chain system and knew that the system functioned by using a switch on the control panel, but he did not receive specific training on the system.

1

¶ 4     While responding to the accident, Massey drove Ambulance 41 with its emergency lights and siren activated.  He drove at a speed of five to ten miles per hour on the right shoulder of I-70 to pass traffic.  As the ambulance approached Exit 45, the road conditions became worse, and Massey used the switch to deploy the automatic chain system.  Despite activating the switch, Massey did not hear anything or notice a difference in the ambulance's handling.  As Massey approached a sloped turn on I-70, he felt the ambulance lose traction.  Massey tried to stop, but the front of the ambulance slid into the rear passenger side of Malott's car.  Malott suffered a concussion, and his car was damaged.

## II.     Procedural Background

¶ 5     Malott filed his initial complaint in October 2022, alleging that the Fire Department was negligent in the manner it maintained Ambulance 41.[1]

¶ 6     The Fire Department moved to dismiss the complaint under C.R.C.P. 12(b)(1), arguing that the emergency vehicle exception to

---

[1] Malott filed an amended complaint in January 2023.  Both parties agree, however, that the amended complaint did not substantially modify Malott's claims for relief or their underlying factual basis.

the CGIA, section 42-4-108(2) and (3), C.R.S. 2024, barred Malott's claims because Massey operated Ambulance 41 with its lights on and sirens engaged, as required by the statute, at the time of the accident.  In response, Malott argued that the CGIA did not bar his claims because it was disputed that Massey operated Ambulance 41 with due regard for Malott's safety[2] and that the Fire Department waived immunity because it failed to adequately maintain the ambulance's automatic chain system.

¶ 7      The court held a *Trinity* hearing[3] to resolve the factual disputes.  Malott called Massey, former Fire Chief Rich Rupp, and Kyle Heer — an expert in engineering and mechanical design — as witnesses.

¶ 8      Massey testified that while he and other crew members were responsible for weekly inspections of the Fire Department's vehicles,

---

[2] Mallot abandoned this argument, but the district court still made findings on the claim based on the evidence presented.

[3] A *Trinity* hearing is an evidentiary hearing in accordance with *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 927 (Colo. 1993).  Its purpose is to allow courts to determine the facts necessary to definitively resolve all disputed issues relating to a public entity's potential immunity under the CGIA before trial. *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n*, 2024 CO 46, ¶ 15 n.2.

Massey did not know whether the automatic chain system was inspected, how often it was inspected, or if the system was working properly on the day of the accident.

¶ 9 Rupp testified that only Ambulance 41 had an automatic chain system but that there was no training or maintenance in place for the system because the Fire Department had never had an ambulance with such a system before. He did note, though, that every time he inspected the underside of Ambulance 41, he would examine the automatic chain system for defects and to make sure that the chains still rotated. Rupp further testified that he had never tested the automatic chain system in a real-world scenario and that he had never needed to use manual or automatic chains to respond to an emergency during his twenty-five-year tenure with the Fire Department. Rupp also testified that after the accident, Ambulance 41 was brought to a vehicle bay where Rupp activated the automatic chain system and heard the chains hit the ground.

¶ 10 Heer reviewed evidence pertaining to the accident and analyzed the weather conditions on the morning of the accident, but he did not inspect the scene of the accident, Ambulance 41, or the automatic chain system. Heer testified that although he had never

worked on or used an automatic chain system, he had seen them in use on other vehicles while those vehicles were driving. Heer opined that the Fire Department failed to adequately maintain Ambulance 41's automatic chain system and that but for the failure to maintain the system, the chains would have deployed, and the ambulance would not have slid into Malott's car.

¶ 11 Following the *Trinity* hearing, the district court concluded that Malott's negligence claim fell under the emergency vehicle exception to the CGIA. The court granted the Fire Department's motion to dismiss, and Malott appeals.

¶ 12 Malott argues that the emergency vehicle exception to section 42-4-108(2) and (3) does not apply because the applicable "operation" — the ambulance's maintenance — occurred before the emergency. Malott also argues that *City of Grand Junction v. Sisneros*, 957 P.2d 1026 (Colo. 1998), is inapplicable and that *Sisneros* is no longer good law and should be reconsidered. We disagree with Malott's first contention and decline to review his second.

## III. Applicable Law

### A. The CGIA

¶ 13 Whether CGIA immunity bars a plaintiff's lawsuit is a threshold question of subject matter jurisdiction governed by C.R.C.P. 12(b)(1). *Maphis v. City of Boulder*, 2022 CO 10, ¶ 13. Plaintiffs carry the burden of proving that a governmental defendant waived CGIA immunity. *Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 85 (Colo. 2003). This is a relatively lenient burden, and plaintiffs are "afforded the reasonable inferences from [their] undisputed evidence." *City & Cnty. of Denver v. Dennis*, 2018 CO 37, ¶ 11. The trial court's findings of fact supporting a determination under the CGIA will not be reversed unless clearly erroneous. *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924-25 (Colo.1993) (the trial court is the fact finder regarding jurisdictional determinations under the CGIA, and appellate review is highly deferential).

¶ 14 The CGIA provides that a "public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort." § 24-10-106(1), C.R.S. 2024 (version effective until Jan. 1, 2025). Section 24-10-106(1)(a) waives that immunity for a "public entity in

6

an action for injuries resulting from . . . [t]he operation of a motor vehicle . . . except emergency vehicles operating within the provisions of section 42-4-108(2) and (3)." *See Hice v. Giron*, 2024 CO 9, ¶ 11. Section 42-4-108(2) grants emergency vehicles certain privileges "subject to the conditions stated in this article," and section 42-4-108(3) explains that these privileges apply "only when such vehicle is making use of audible or visual signals." Simply put, "the CGIA grants government entities broad immunity, waives that immunity for the operation of motor vehicles by public entities and their employees, and excludes emergency drivers who comply with the cross-referenced traffic code provisions from that waiver." *Hice*, ¶ 12.

## B. Standard of Review

We interpret statutes, including the CGIA, de novo. *Id.* at ¶ 10. Starting with the statute's language, we give the words their "plain and ordinary meanings." *McBride v. People*, 2022 CO 30, ¶ 23. "If the statutory language is unambiguous, then we look no further." *Id.* But if it's ambiguous, which occurs "when it is reasonably susceptible of multiple interpretations," "we may consider other aids to statutory construction," *id.*, such as the

7

purpose of the statute, any legislative history, and the consequences of a particular construction, § 2-4-203(1), C.R.S. 2024. Because statutory immunity operates in derogation of common law, we "'strictly construe the statute's immunity provisions' and 'broadly construe' the CGIA's waiver provisions." *Hice*, ¶ 9 (quoting *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000)). Likewise, we also strictly construe exceptions to those waivers because they are grants of immunity. *See id.*

## IV. Discussion

### A. The CGIA

¶ 16 Malott contends that the CGIA's waiver of immunity for operation of a motor vehicle is broad and encompasses vehicle maintenance. Specifically, he asserts that the emergency vehicle exception doesn't even apply here because the Fire Department's failure to maintain the automatic chain system occurred before any emergency and, therefore, the Fire Department waived its immunity. We disagree.

¶ 17 Malott relies on *Harris v. Regional Transportation District*, 15 P.3d 782 (Colo. App. 2000), to argue that maintenance is part of the operation of a motor vehicle and the Fire Department's failure to

8

maintain Ambulance 41's automatic chain system waived its immunity. In *Harris*, the plaintiff was injured while exiting a Regional Transportation District (RTD) bus when she slipped on ice and slush that had accumulated on the bus's interior steps. *Id.* at 783. A division of this court concluded that the waiver provision of section 24-10-106(1)(a) applied to injuries resulting from the operation of the motor vehicle by a public employee acting as the operator and that "operation" referred to the actions of the operator related to the physical control of the bus's functions. *See id.* Based on that definition, the *Harris* division held that the alleged negligent failure of the bus driver to ensure that passengers, like the plaintiff, boarded and disembarked safely was included in the statute's waiver of immunity. Under the division's interpretation of the CGIA, "if injuries otherwise result from the operation of a bus, even if the underlying cause may have been faulty maintenance, the waiver of immunity is applicable." *Id.* at 785; *see also Teran v. Reg'l Transp. Dist.*, 2020 COA 151, ¶ 19 (holding that even though an RTD bus driver did not act negligently when operating the bus, because the plaintiff's injuries resulted from RTD's failure to

maintain a handrail that came loose when the bus braked, CGIA immunity was waived).

¶ 18    Here, the district court was unconvinced that the automatic chain system on Ambulance 41 was negligently maintained or that it actually failed to deploy at the time of the accident.  Even if the automatic chain system did not deploy properly, and the failure was caused by the lack of appropriate maintenance, the district court concluded that the Fire Department was immune under the CGIA.

¶ 19    In arriving at this conclusion, the district court declined to extend *Harris*'s logic.  We agree with the district court that *Harris* is distinguishable.  While an RTD bus and an ambulance are both vehicles operated by public employees and thus subject to the CGIA, a bus is used to transport passengers, not to respond to emergencies.  *Harris* did not address the emergency vehicle exception because the facts did not warrant such an analysis. Therefore, Malott's reliance on *Harris* is misplaced.

¶ 20    The legislature created the emergency vehicle exception to immunize public employees from tort liability in situations requiring an immediate response.  *Sisneros*, 957 P.2d at 1029 n.4.  Here, Massey was responding properly and lawfully to precisely the type

of emergency situation the legislature envisioned when it created the emergency vehicle exception. The district court found that Massey activated Ambulance 41's lights and sirens, acted with due regard for Malott's safety, and did not endanger life or property, and that there was no evidence indicating that he was careless when responding to the rollover accident. Massey's response fits squarely within the CGIA's requirement that the operator of an emergency vehicle respond to an emergency with the vehicle's lights and sirens on. *See id.*

¶ 21    We, therefore, conclude that because Massey operated Ambulance 41 properly and lawfully while responding to the emergency rollover accident, the emergency vehicle exception applies, and the Fire Department is immune under the CGIA. The district court properly dismissed Malott's case under C.R.C.P. 12(b)(1).

### B.    *Sisneros*'s Validity

¶ 22    Next, Malott argues that this court should decline to follow the supreme court's precedent in *Sisneros* because it applies an outdated method of interpreting the CGIA. Malott asserts that this court should instead find that the emergency vehicle exception only

restores immunity when an injury results from the conduct specified in section 42-4-108(2)(a)-(d).

¶ 23     We are not at liberty to disregard the supreme court's ruling in *Sisneros* absent some clear indication that the supreme court has overruled it. *Silver v. Colo. Cas. Ins. Co.*, 219 P.3d 324, 330 (Colo. App. 2009) (citing *Bernal v. Lumbermens Mut. Cas. Co.*, 97 P.3d 197, 203 (Colo. App. 2003)). Accordingly, because we lack the authority to decide the validity of *Sisneros*, we decline to address this issue.

## V.    Disposition

¶ 24     We affirm the district court's judgment.

JUDGE FREYRE and JUDGE GOMEZ concur.